*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
March 11, 2021

Plaintiff-Appellee,

v

No. 346867
Kent Circuit Court
LC No. 99-006518-FC

MARC ANTHONY OSBORNE,

Defendant-Appellant.

Before: REDFORD, P.J., and SAWYER and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right the trial court's order upholding his sentence of life without parole. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant was a juvenile (being 50 days shy of his eighteenth birthday) when he committed a murder. He was convicted by a jury in 1999 of first-degree murder and sentenced to life without parole.[1] After the United States Supreme Court issued its decisions in *Miller v Alabama*, 567 US 460, 470; 132 S Ct 2455; 183 L Ed 2d 407 (2012), and *Montgomery v Louisiana*, ___ US ___, ___; 136 S Ct 718, 732, 736; 193 L Ed 2d 599 (2016), and the Legislature's subsequent enactment of MCL 769.25, the prosecution moved the trial court to uphold defendant's life without parole sentence. After a resentencing hearing, the trial court upheld the sentence.

The underlying facts of defendant's conviction were previously summarized by this Court:

In his third statement to the police, defendant explained that on the night of the murder he and the victim had violent but consensual sex in the park where the police later discovered the victim's body. Defendant admitted that a subsequent argument,

---

[1] This Court affirmed defendant's conviction. *People v Osborne*, unpublished per curiam opinion of the Court of Appeals, issued November 27, 2001 (Docket No. 225868).

involving whether to advise the victim's steady boyfriend regarding their sex act, escalated out of control. Enraged after the victim slapped him, defendant stabbed the victim in her back causing her to scream, then decided to relieve the victim's suffering by stabbing her through her heart. When the stabbings failed to kill the victim, defendant manually strangled the victim to death; defendant recalled that the strangulation "seem[ed] like it took years." After successfully ending the victim's life, defendant attempted to arrange the murder scene to reflect a rape or robbery of the victim: defendant hit the victim's forehead with a glass bottle she had been drinking from, ripped the victim's clothing, removed her underwear, emptied her purse, then fled the scene and discarded various items of physical evidence. Defendant informed the police where he had thrown the knife that he had used to stab the victim and another location where he had discarded his bloody shirt, and the police later recovered both the knife and shirt where defendant had stated they would be.

On the day following the murder, a witness observed scratches on defendant's chest, which defendant explained by inquiring, "Have you ever had sex with a wild, crazy, drunk woman?" According to the witness, defendant clarified that the woman to whom he referred was the victim. An expert witness opined that DNA within seminal fluid obtained from the victim's body was consistent with defendant's DNA through each of the nine loci tested. The expert calculated that the likelihood of randomly selecting another individual unrelated to defendant whose DNA matched that within the sperm taken from the victim's body "would be, in the Caucasion [sic] population, one in 169.3 billion." A forensic pathologist testified, consistently with the version of the murder related by defendant, that strangulation caused the victim's death, that the victim had stab wounds in her back and left chest area that were inflicted while the victim was alive, and that the victim had lacerations and bruises on her forehead and temple. The t-shirt defendant designed was found inside a bag that also contained identification cards of the victim. [*People v Osborne*, unpublished per curiam opinion of the Court of Appeals, issued November 27, 2001 (Docket No. 225868), slip op at 2 (footnote omitted).]

After filing his claim of appeal, defendant moved this Court to remand for a *Ginther*[2] hearing on the issue of his counsel's effectiveness at sentencing. This Court remanded to the trial court to allow defendant to file a motion for resentencing and for a *Ginther* hearing.[3] The trial court held a *Ginther* hearing, and then entered an order concluding that defendant's counsel was not ineffective and denying defendant's motion for resentencing.

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[3] *People v Osborne*, unpublished order of the Court of Appeals, entered December 10, 2019 (Docket No. 346867)

## II. *MILLER* AND ITS APPLICATION TO MICHIGAN SENTENCING

In *Miller*, 567 US at 479, the United States Supreme Court held that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without the possibility of parole for juvenile offenders." The *Miller* Court found that "children are constitutionally different from adults for purposes of sentencing," stating that because "juveniles have diminished culpability and greater prospects for reform," children under 18[4] "are less deserving of the most severe punishments." *Id*. at 471 (quotation marks and citation omitted). The Court directed lower courts to "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison," and specifically required fact-finders "to take into account the differences among defendants and crimes." *Id*. at 480 and n 8.

In 2016, the Supreme Court issued its opinion in *Montgomery*, ___ US at ___; 136 S Ct at 736, giving retroactive effect to *Miller*. *Montgomery* required that juvenile offenders sentenced to life without parole "be given the opportunity to show their crime did not reflect irreparable corruption" because of the recognition that "children are constitutionally different from adults in their level of culpability." *Id*.

The Court elaborated:

> *Miller* requires that before sentencing a juvenile to life without parole, the sentencing judge take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison. The Court recognized that a sentencer might encounter the rare juvenile offender who exhibits such irretrievable depravity that rehabilitation is impossible and life without parole is justified. But in light of children's diminished culpability and heightened capacity for change, *Miller* made clear that appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon. [*Id*. at 733-734 (quotation marks and citations omitted).]

The *Montgomery* Court also held that "[e]ven if a court considers a child's age before sentencing him or her to a lifetime in prison, that sentence still violates the Eighth Amendment for a child whose crime reflects unfortunate yet transient immaturity." *Id*. at 734 (quotation marks and citation omitted). Stated differently,

> [b]ecause *Miller* determined that sentencing a child to life without parole is excessive for all but the rare juvenile offender whose crime reflects irreparable corruption, it rendered life without parole an unconstitutional penalty for a class of

---

[4] The Court in *Miller* was specific that its holding applied to "those under the age of 18 at the time of their crimes," 567 US at 465, notwithstanding that some states, including Michigan, consider an individual to be a "juvenile" under the jurisdiction of the family division of the circuit court if he was under the age of 17 at the time of his crime. See MCL 712A.5; *People v Conat*, 283 Mich App 134,139; 605 NW2d 49 (1999). Consistent with *Miller*, our use of the word "juvenile" in this opinion refers to individuals under the age of 18 at the time of their crimes.

defendants because of their status—that is, juvenile offenders whose crimes reflect the transient immaturity of youth. [*Id*. (quotation marks and citations omitted).]

In light of *Miller*, our Legislature enacted MCL 769.25, which provides in pertinent part:

(1) This section applies to a criminal defendant who was less than 18 years of age at the time he or she committed an offense described in subsection (2) . . . .

\* \* \*

(2) The prosecuting attorney may file a motion under this section to sentence a defendant described in subsection (1) to imprisonment for life without the possibility of parole if the individual is or was convicted of any of the following violations:

\* \* \*

(b) A violation of section [MCL 750.]16(5), [MCL 750.]18(7), [MCL 750.]316, [MCL 750.]436(2)(e), or [MCL 750.]543f of the Michigan penal code, 1931 PA 328, MCL 750.16, 750.18, 750.316, 750.436, and 750.543f.

\* \* \*

(d) Any violation of law involving the death of another person for which parole eligibility is expressly denied under state law.

(3) If the prosecuting attorney intends to seek a sentence of imprisonment for life without the possibility of parole for a case described in subsection (1)(a), the prosecuting attorney shall file the motion within 21 days after the defendant is convicted of that violation. If the prosecuting attorney intends to seek a sentence of imprisonment for life without the possibility of parole for a case described under subsection (1)(b), the prosecuting attorney shall file the motion within 90 days after the effective date of the amendatory act that added this section. The motion shall specify the grounds on which the prosecuting attorney is requesting the court to impose a sentence of imprisonment for life without the possibility of parole.

\* \* \*

(6) If the prosecuting attorney files a motion under subsection (2), the court shall conduct a hearing on the motion as part of the sentencing process. At the hearing, the trial court shall consider the factors listed in [*Miller*, 567 US at 477-478,] and may consider any other criteria relevant to its decision, including the individual's record while incarcerated.

(7) At the hearing under subsection (6), the court shall specify on the record the aggravating and mitigating circumstances considered by the court and the court's reasons supporting the sentence imposed. The court may consider evidence

-4-

presented at trial together with any evidence presented at the sentencing hearing. [See 22 PA 2014 (effective date March 4, 2014).]

## III. PROPORTIONALITY PRESUMPTIONS AND BURDENS

Defendant argues that the trial court erred by placing the burden on defendant to establish that life imprisonment without parole was proportionate and that there should be a presumption against life-without-parole sentences. Alternatively, he argues that defense counsel was ineffective for failing to raise this issue before the trial court. We disagree.

We review de novo questions of constitutional law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). We also review de novo, as a question of law, the proper allocation of the burden of proof. See *People v Robar*, 321 Mich App 106, 134; 910 NW2d 328 (2017). Determining whether a defendant received ineffective assistance of counsel is a mixed question of fact and constitutional law. *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018). We review the trial court's findings of fact for clear error and questions of law de novo. *Id*. "Clear error exists if the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Miller*, 482 Mich 540, 544; 759 NW2d 850 (2008) (quotation marks and citation omitted).

In *People v Skinner*, 502 Mich 89, 131; 917 NW2d 292 (2018), our Supreme Court stated that "there is language in *Montgomery* that suggests that the juvenile offender bears the burden of showing that life without parole is not the appropriate sentence by introducing mitigating evidence." The *Skinner* Court also explicitly rejected the proposition that the trial court should indulge a presumption against life-without-parole sentences. *Id*. at 131 (noting that "neither *Miller* nor *Montgomery* imposes a presumption *against* life without parole for those juveniles who have been convicted of first-degree murder on either the trial court or the appellate court."). While the *Skinner* Court did not explicitly allocate the burden of proof at a resentencing hearing under MCL 769.25, it made it clear that "*Miller* and *Montgomery* simply require the trial court to consider an offender's youth and attendant characteristics before imposing life without parole." *Id*. at 131 (quotation marks and citation omitted). The Court also noted language in *Montgomery* supporting the conclusion that "the juvenile offender bears the burden of showing that life without parole is not the appropriate sentence by introducing mitigating evidence." *Id*. at 131, quoting *Montgomery*, ___ US at ___; 136 S Ct at 736, (stating that "prisoners like Montgomery must be given the opportunity to show their crime did not reflect irreparable corruption."). In other words, *Skinner* suggests that there is no presumption either in favor of or against a life-without-parole sentence, and that to the extent either party bears a burden of proof, that burden falls on defendant to present mitigating factors. *Id*. Defendant has not supported his argument that the prosecution bore the burden of proving that his life-without-parole sentence was constitutional or that a presumption against such a sentence existed.[5] And in light of *Skinner*, defense counsel cannot be

---

[5] Defendant cites several cases from other jurisdictions in support of his suggestion that the burden of proving the constitutionality of a life-without-parole sentence falls on the prosecution. Yet, defendant also cites caselaw from different jurisdictions that recognize that the burden falls on a

ineffective for failing to raise a futile objection. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").

## IV. APPLICATION OF *MILLER* FACTORS

Defendant also argues that the trial court misapplied the factors outlined in *Miller* in upholding his sentence. We disagree. This Court reviews for an abuse of discretion a trial court's decision to uphold a life-without-parole sentence. *Skinner*, 502 Mich at 131. "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *People v Waterstone*, 296 Mich App 121, 131-132; 818 NW2d 432 (2012). A sentence constitutes an abuse of discretion when the sentence violates the principle of proportionality, which requires that a sentence be proportionate to the seriousness of the circumstances of the offense and the offender. *Skinner*, 502 Mich at 131-132. We review the trial court's factual findings for clear error. *Id*. at 137 n 27.

*Miller* does not prohibit a juvenile from being sentenced to life without parole; rather, it prohibits a sentencing scheme that *mandates* life without parole for juvenile offenders. *Miller*, 567 US at 479. The *Miller* Court refused a categorical bar on life without parole for juveniles; before imposing such a sentence, a court must consider "children's diminished culpability and heightened capacity for change . . . ." *Id*. Stated differently, the Court required a trial court "to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id*. at 480.

To assist trial courts in making these determinations, the *Miller* Court outlined several factors a sentencing court should consider:[6]

> (1) a defendant's "chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences"; (2) "the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional"; (3) "the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him"; (4) whether "he might have been charged [with] and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys"; and (5) "the

---

juvenile offender. " 'Cases from other jurisdictions are not binding precedent, but [this Court] may consider them to the extent this Court finds their legal reasoning persuasive.' " *People v Caddell*, ___ Mich App ___; ___ NW2d ___ (2020) (Docket Nos. 343750 and 343993), slip op at 5, quoting *Auto Owners Ins Co v Seils*, 310 Mich App 132, 147 n 5; 871 NW2d 530 (2015). Here, however, in light of *Skinner*, we see no need to look to the law of other jurisdictions.

[6] MCL 769.25(6) explicitly requires a trial court to consider these factors during a *Miller* hearing.

> possibility of rehabilitation . . . ." [*Skinner*, 502 Mich at 114-115, quoting *Miller*, 567 US at 477-478 (alteration in original).]

These factors are circumstances that mitigate the proportionality of a sentence of life imprisonment without parole for juvenile offenders. *Miller*, 567 US at 489. Importantly, the *Miller* Court noted that there was a difference between the crime of a juvenile offender that demonstrated the juvenile's transient immaturity and the crime of the "rare juvenile offender whose crime reflects irreparable corruption." *Id.* at 479-480. Our Supreme Court has confirmed that the factors outlined in *Miller* are mitigating factors. *Skinner*, 502 Mich at 115 ("It is undisputed that all of these factors are mitigating factors."). "That is, these are factors that counsel against irrevocably sentencing [juveniles] to a lifetime in prison." *Id.* (quotation marks and citation omitted; alteration in original).

With respect to defendant's age and maturity, the trial court in this case stated:

> There are a number of factors in *Miller* that this Court needs to look at. First of all, the defendant's age at the time of this. And *Miller* applies to those that are under the age of 18. The defendant was not much under the age of 18. He was 17 years old, ten months and 11 days. He was 50 days shy of being an 18-year-old.
>
> When—the Court also has to look at the defendant's maturity. The detective this morning, testified and I have no reason to doubt the testimony, that while he was dealing with the defendant, he seemed to be more mature than his age. I'm aware that the defendant had been drinking. When he could, according to his testimony and some of the reports, that he had used cocaine once in a while, acid. That he had been using marijuana almost every day since he was 12 years old. I see nothing in the record that sees that the defendant, because of his age, could not appreciate the risk of what he was doing, or appreciate the consequences. The report from the criminal responsibility, says that he is free of signs and symptoms of mental illness, and that was done—there was two psychological reports, really, that—that this Court has looked at. One done at the time of the murder, and then also the one done recently by—by defense for this hearing. None of those show any symptoms or mental illness issues.

The trial court later summarized why it would not resentence defendant:

> I believe that you have to deal with the consequences of your actions. I believe that you were only 50 days from being an 18-year-old. And that would be totally different if you were 12, 13, or 14.

Defendant argues that the trial court inappropriately considered his age as an aggravating factor. We disagree. To the contrary, the record reflects that the trial court considered defendant's age and maturity as mitigating factors, and it reviewed psychological reports of defendant and the details of the "frontal and pre-frontal cortex that deal with impulse control, judgment, and decision making." But the court concluded in this case that those factors did not warrant a lesser sentence. In reaching this conclusion, the trial court did not abuse its discretion. *Skinner*, 502 Mich at 131.

Regarding the last factor, rehabilitation, defendant argues that the trial court did not find that he was "irreparably corrupt" and that it therefore abused its discretion by upholding his sentence. We disagree. Defendant's argument is premised on the proposition that trial courts cannot sentence juveniles to life without parole without explicitly finding that they are irreparably corrupt. However, our Supreme Court has expressly held that "*Miller* does not require trial courts to make a finding of fact regarding a child's incorrigibility." *Skinner*, 502 Mich at 122. "In other words, the Eighth Amendment does not require the finding of any particular fact before imposing a life-without-parole sentence . . . ." *Id*. at 125. "Whether a juvenile is irreparably corrupt is not a factual finding; instead, it is a moral judgment that is made after considering and weighing the *Miller* factors." *Id*. at 125 n 18.

Defendant has not demonstrated that the trial court erred in its application of the *Miller* factors or in its determination that defendant's life-without-parole sentence was proportionate to the offense and to the offender. The trial court's determination was within the range of reasonable and principled outcomes. *Skinner*, 502 Mich at 131.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues that defense counsel was ineffective in failing to investigate and present mitigating evidence at his *Miller* hearing, and that he was further ineffective in failing to hire an expert in adolescent brain development.[7] We disagree. As stated, we remanded for a *Ginther* hearing to allow development of the record regarding defendant's claim.[8] After reviewing the newly submitted evidence, we conclude that the trial court properly held that defense counsel was not ineffective.

To receive a new trial on the basis of ineffective assistance of counsel, defendant "must show both that counsel's representation fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Smith v Spisak*, 558 US 139, 149; 130 S Ct 676; 175 L Ed 2d 595 (2010) (quotation marks and citation omitted); *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). Accordingly, a defendant must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland v Washington*, 466 US 668, 690; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *Trakhtenberg*, 493 Mich at 62. "The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 US at 690. Secondly, defendant must show a reasonable probability that, "but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. "Because defendant bears the burden of demonstrating both deficient performance and

---

[7] Determining whether a defendant received ineffective assistance of counsel is a mixed question of fact and constitutional law. *Head*, 323 Mich App at 539. This Court reviews findings of fact for clear error and questions of law de novo. *Id*.

[8] See *People v Osborne*, unpublished order of the Court of Appeals, entered December 10, 2019 (Docket No. 346867).

prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

The record shows that defense counsel decided to focus on certain *Miller* factors that he believed would assist in mitigating against a life-without-parole sentence. During the *Ginther* hearing, defense counsel testified that he did not hire a mitigation specialist because he felt

> that we had more than enough to show that [defendant] had grown up in a dysfunctional family and that he had—and that had led to the original offense and, quite frankly, I was more emp—I was more involved with his rehabilitation in prison. I thought that was the—the key there.

Defense counsel's decision to not hire a mitigation specialist was thus a matter of trial strategy, and defendant has not overcome the presumption that this strategy fell within the wide range of professionally competent assistance. *Strickland*, 466 US at 690; *Carbin*, 463 Mich at 600. This Court will also not evaluate defense counsel's decisions with the benefit of hindsight. *People v Grant*, 470 Mich 477, 485; 684 NW2d 686 (2004). "The fact that the strategy chosen by defense counsel did not work does not constitute ineffective assistance of counsel." *People v Williams*, 240 Mich App 316, 332; 614 NW2d 647 (2000).

Moreover, defendant cannot demonstrate that he was prejudiced by his counsel's decision not to employ a mitigation specialist at the *Miller* hearing. During the *Ginther* hearing, defendant's appellate counsel submitted affidavits from defendant's mother, his father's ex-wives, defendant's friend, his half-sister, defense counsel, and a mitigation specialist in support of his argument that trial counsel was ineffective. We have reviewed all of the affidavits and conclude that none of them establish that defense trial counsel was ineffective. The record shows that defendant's mother refused to testify at the *Miller* hearing; her refusal does not demonstrate ineffectiveness on the part of defense counsel. The affidavits from the ex-wives of defendant's father merely provide background regarding defendant's father; they do not provide any insight into defendant's childhood or home environment. The affidavit from defendant's friend has limited, if any, relevance, because she only became friends with defendant a year before he committed his offense and thus lacked personal knowledge of defendant's childhood or home environment. Defendant's half-sister did not even know defendant until he was incarcerated, and therefore could provide no insight into defendant's childhood or home environment. Defense counsel indicated that he believed that a mitigation specialist was inappropriate for this case because both defendant and defendant's mother gave no indication or even suggested that defendant was abused or had a dysfunctional childhood. The affidavit from the mitigation specialist merely states her opinion concerning the amount of time that should be spent on a mitigation investigation; however, defendant presents no evidence concerning how long defense counsel spent on his case, and has not established a factual predicate for this claim. *Carbin*, 463 Mich at 600.

Appellate counsel also submitted several documents that trial counsel theoretically could have submitted to the trial court during the *Miller* hearing, including a reentry plan, defendant's college application, two semesters worth of grades from defendant's time in high school, several records relating to defendant's father, an obituary of defendant's half-brother, and health records of defendant's mother. The reentry plan, concerning defendant's plan for rejoining society if he was sentenced to a term of years, was not relevant to establishing whether defendant's life-without-

parole sentence was proportionate. Likewise, defendant's college application while incarcerated and his two semesters' worth of grades from high school shed no extra light on defense counsel's effectiveness. Similarly, the records relating to defendant's father, such as records relating to his criminal history, health, divorces, bankruptcy, and death certificate, as well as the obituary of the father's other child, defendant's guardianship, and his mother's health records, bore little relevance, if any, to defendant's childhood or home environment. Although defendant argues these documents would have supported the argument that defendant had been abused as a child, again, defendant himself testified during the *Miller* hearing that he was not abused. With none of the records providing any insight into defendant's childhood or home environment, we cannot conclude that defense counsel was ineffective for failing to investigate or hire someone to retrieve these documents. Accordingly, the trial court did not err by finding that none of these documents would have caused a reasonable probability of a different outcome. *Carbin*, 463 Mich at 600.

With respect to defense counsel's failure to hire an expert in adolescent brain science, we also do not find that defense counsel was ineffective. During the *Miller* hearing, defense counsel referred in his closing argument to the work of Dr. Daniel Keating, M.D., an expert in juvenile brain development. However, defense counsel did not submit any reports or research from Dr. Keating detailing the development of juvenile brains. Nonetheless, the trial court recognized that juveniles are constitutionally different from adults for purposes of sentencing because they have diminished capacity and greater prospects for reform, and it demonstrated substantial familiarity with the study of juvenile brain development, specifically making reference to the level of prefrontal cortex development in children and how that development impacted impulse control and decision making. The trial court acknowledged that "it has been shown that [the prefrontal cortex] does not develop fully until someone is in their mid-20s."

The trial court also referred to *Miller* and the rationale behind its holding, stating that "the whole basis for the *Miller* finding is that it has been determined and the Supreme Court, obviously, agreed with this, that the—that there are issues that deal with the immaturity of the prefrontal cortex of the brain of children." The trial court acknowledged that there were numerous articles to articulate this idea "and also raised in the psychiatrist's opinion for this particular case." The trial court stated that it was familiar with Dr. Keating's reports on adolescent brain science. Defense counsel stated during the remand hearing that he did not hire an expert in adolescent brain science to testify because it would have been superfluous and redundant, and that the trial court had reviewed all the records submitted and was familiar with Dr. Keating's research. This decision is supported by the record and was not objectively unreasonable. *Trakhtenberg*, 493 Mich at 51.

Further, even if defense counsel's decision not to hire an expert was objectively unreasonable, defendant cannot establish prejudice. Despite the trial court's knowledge of adolescent brain science, it still determined, after weighing the *Miller* factors, that a life-without-parole sentence was appropriate. In other words, the trial court weighed the *Miller* factors and determined that defendant's level of brain development was not a sufficient mitigating factor. Therefore, even if defense counsel had hired Dr. Keating or another expert to testify about adolescent brain science generally, there was not a reasonable probability that a different outcome would have resulted. *Id.*

## VI. CONSTITUTIONAL CHALLENGE TO JUVENILE LIFE-WITHOUT-PAROLE SENTENCES

Lastly, defendant requests that this Court categorically bar sentences of life without parole for juvenile offenders under the United States and Michigan Constitutions. We lack the authority to do so.

The United States Constitution prohibits "cruel *and* unusual punishments," and the Michigan Constitution forbids "cruel *or* unusual punishment." US Const, Am VIII (emphasis added); Const 1963, art 1, § 16 (emphasis added). Michigan's prohibition against cruel or unusual punishment is interpreted more broadly than the federal prohibition. See *People v Bullock*, 440 Mich 15, 30-35; 485 NW2d 866 (1992). Accordingly, if a sentence is constitutional under Michigan's Constitution, it is also constitutional under the federal Constitution. *People v Nunez*, 242 Mich App 610, 618 n 2; 619 NW2d 550 (2000). A sentence constitutes cruel or unusual punishment when it is grossly disproportionate to the seriousness of the circumstances surrounding the offense and the offender. See *Bullock*, 440 Mich at 32; see also *People v Bowling*, 299 Mich App 552, 557-558; 830 NW2d 800 (2013).

Our Supreme Court in *People v Carp*, 496 Mich 440, 521; 852 NW2d 801 (2014), vacated on in part on other grounds *Montgomery*, ___ US ___; 136 S Ct 718, explicitly concluded that life-without-parole sentences are not categorically disproportionate (and therefore cruel or unusual) when imposed on juvenile homicide offenders. The *Skinner* Court also noted that there was no blanket prohibition against life-without-parole sentences for juveniles. *Id*. at 104. Indeed, *Miller* explicitly declined to establish a categorical bar of such sentences, stating that the "appropriate occasions for sentencing juveniles to this harshest possible penalty" would likely be "uncommon" or "rare." *Miller*, 567 US at 579-580 (citation omitted).

We are not at liberty to disregard this precedent. See *Maier v Maier*, 311 Mich App 218, 224; 874 NW2d 725 (2015) ("This Court is bound to follow the precedent of the [Michigan] Supreme Court."); *People v Gilliam*, 479 Mich 25, 261; 734 NW2d 585 (2007) (noting that state courts are bound to by United States Supreme Court decisions construing federal law). We therefore decline defendant's invitation to categorically bar sentences of life without parole for juvenile offenders.

Affirmed.

/s/ James Robert Redford
/s/ David H. Sawyer
/s/ Mark T. Boonstra