*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DARRICK LAVALE DUFFIN, also known as
DARRICK LAVALE COLEMAN, also known as
DARRICK LAVARNE DUFFIN, also known as
DARRICK LAVERNE DUFFIN, also known as
DARRICK COLEMAN, also known as DARRICK
LAVAUE COLEMAN, also known as RASHAAD
JABAAR ATKINS, also known as DARRICK L.
COLEMAN, also known as DARRICK LAVARNE
COLEMAN, also known as DARRICK L. DUFFIN,
also known as ARALE PERCE CLARK, also known
as ARDALE PERCY CLARK, also known as CORY
ALEXANDER HERNDON, also known as COREY
ALEXANDER HERNDON, also known as
CHRISTOPHER ERIC JACKSON, also known as
RASHAD JABAAR ATKINS, also known as
DARRICK DUFFIN,

        Defendant-Appellant.

UNPUBLISHED
January 21, 2021

No. 350302
Washtenaw Circuit Court
LC No. 18-000525-FC

Before: SWARTZLE, P.J., and RONAYNE KRAUSE and RICK, JJ.

PER CURIAM.

Defendant, Darrick Lavale Duffin, appeals as of right his bench trial convictions of felony murder, MCL 750.316(1)(b); second-degree murder, MCL 750.317; carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b; and being a felon in possession of a firearm (felon-in-possession), MCL 750.224f. The trial court sentenced defendant to life

imprisonment for the felony-murder offense,[1] two years' imprisonment for the felony-firearm offense, and 40 months to five years' imprisonment for the felon-in-possession offense. On appeal, defendant argues that insufficient evidence supported each of his convictions. We vacate defendant's second-degree murder conviction and remand for correction of defendant's judgment of sentence, and in all other respects we affirm.

## I. BACKGROUND

On March 4, 2017, officers from the Washtenaw County Sheriff's Office responded to a report that a bullet had been found in an apartment kitchen. The officers observed that the bullet had come from an adjoining apartment. Officers found the door of the adjoining apartment unlocked. Inside, officers found the victim deceased on the floor of her kitchen. She had been shot twice: the medical examiner opined that she had first been shot in the chest near the couch with the gun touching her skin, and she was then shot in the back as she stumbled away into the kitchen. Witnesses testified that the victim owned a gun, however no gun was found in the apartment.

Witnesses testified that the victim kept large amounts of cash in her apartment, on her person, and particularly in her sock. However, the only cash found in the apartment was tucked into the victim's couch. The victim was found to be wearing only one sock and one shoe; the matching shoe and sock were found by the couch. Two emptied purses were also found in the apartment, one of which contained empty plastic bags that the detectives testified smelled like marijuana. Multiple witnesses testified that the victim used and sold drugs, and tests showed that the victim had cocaine and either THC or marijuana in her system when she died. However, no drugs were found in the apartment. Furthermore, witnesses testified that the victim had two active cell phones at the time. However, investigators found only inactive cell phones in the apartment and several chargers that did not match any of those phones. Other than a purse having had its contents emptied onto the victim's bed, bullet holes, and blood splatter; the apartment was otherwise "very neat and orderly." Among other electronics found in the apartment, a laptop computer was found on a table.

Cell phone records and latent print examinations reflected that defendant had a relationship with the victim. Cell phone records reflected that defendant was in daily contact with the victim before her death. On many days, defendant and the victim exchanged multiple phone calls. Cell phone location data reflected that defendant's cell phone continuously used the cell tower encompassing the victim's apartment for more than 12 hours prior to the victim's neighbor reporting that a bullet was in her kitchen. Defendant's prints were found on items in the victim's apartment. Cell phone records and location data reflected that the victim's cell phone activity ceased just before defendant's location moved away from the victim's apartment. Evidence showed that a post was made from a Twitter account associated with the victim at 3:17 p.m. The post contained a picture or video of a concert the victim had attended the night before her death.

---

[1] Defendant's second-degree murder and felony-murder convictions were "merged." As we will discuss, this was not the correct way to address the double-jeopardy implications of two murder convictions arising out of the same death.

Police were unable to determine whether the post had been made using a cell phone or a computer, nor was there any specific evidence that it had actually been made by the victim.

A witness testified that he picked up defendant from a car wash around 3:30 p.m. on March 4, after defendant texted him that he had "hit a lick." The car wash was about a quarter mile from the victim's apartment. According to multiple witnesses, defendant typically used the phrase "hit a lick" after he had stolen something. Witnesses testified that defendant made money by stealing and that he did not have a job. Defendant also told one witness that he "popped her." Over the next 24 hours, defendant gave away several hundred dollars, which was unusual for him, and otherwise demonstrated that he possessed thousands more. A witness also testified that defendant possessed large sums of cocaine. According to witnesses, defendant claimed to have won the money at the casino. Although witness testimony and cell phone location data demonstrated that defendant went to Motor City Casino multiple times on March 4 and March 5, those who visited the casino with him testified that they had no knowledge that he won money while he was there.

## II. STANDARD OF REVIEW AND ELEMENTS OF CHARGED OFFENSES

Defendant argues that the evidence was insufficient to support his convictions. We review a sufficiency of the evidence claim de novo. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). "The sufficient evidence requirement is a part of every criminal defendant's due process rights." *People v Johnson*, 460 Mich 720, 723; 597 NW2d 73 (1999) (quotation omitted).

> [W]hen determining whether sufficient evidence has been presented to sustain a conviction, a court must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. [*People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992).]

It is the province of the trier of fact to determine what inferences may be fairly drawn from the evidence. *Id*. at 514-515. The prosecution need not "disprove every reasonable theory consistent with innocence," but rather must only prove the elements of the crime beyond a reasonable doubt "in the face of whatever contradictory evidence the defendant may provide." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000) (quotation marks and citation omitted). "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999) (quotation omitted).[2]

---

[2] Defendant erroneously contends that "the findings of fact made by the trial judge in a bench trial are reviewed for clear error." The cases that defendant cites to advance this proposition did not involve an appeal following a bench trial. See *People v Gillam*, 479 Mich 253, 260; 734 NW2d 585 (2007) (appeal from an evidentiary suppression hearing); see also *People v Williams*, 475 Mich 245, 248-250; 716 NW2d 208 (2006) (appeal from a determination whether defendant had been denied the right to a speedy trial). Moreover, our Supreme Court disavowed the clear error standard for bench trials in *People v Petrella*, 424 Mich 221, 268-270; 380 NW2d 11 (1985).

"In order to convict a defendant of second-degree murder, the prosecution must prove: (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse." *People v Roper*, 286 Mich App 77, 84; 777 NW2d 483 (2009) (citation and quotation marks omitted). "Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Id*. (citation and quotation marks omitted). "Malice can be inferred from evidence that a defendant intentionally set in motion a force likely to cause death or great bodily harm." *People v Djordjevic*, 230 Mich App 459, 462; 584 NW2d 610 (1998).

"The elements of felony murder are (1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result, (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in MCL 750.316(1)(b)." *People v Gayheart*, 285 Mich App 202, 210; 776 NW2d 330 (2009). Among the enumerated felonies in MCL 750.316(1)(b) are "larceny of any kind" and robbery. MCL 750.316(1)(b). Michigan retains the common-law definition of larceny: a trespassory taking of the personal property of another with intent to steal. *People v March*, 499 Mich 389, 401; 886 NW2d 396 (2016). A person commits robbery if "in the course of committing a larceny of any money or other property that may be the subject of larceny," that person "uses force or violence against any person who is present, or who assaults or puts the person in fear[.]" MCL 750.530; see also *People v Passage*, 277 Mich App 175, 177-178; 743 NW2d 746 (2007).

The elements of felony-firearm under MCL 750.227b are "that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999). The elements of felon-in-possession under MCL 750.224f are that the defendant has been convicted of a felony and has not had his or her right to possess a firearm restored, and that the defendant possessed a firearm for reasons other than self-defense. *People v Perkins*, 473 Mich 626, 629-631; 703 NW2d 448 (2005); *People v Dupree*, 486 Mich 693, 704-706; 768 NW2d 399 (2010). The parties stipulated that defendant had been convicted of a felony and that his right to possess a firearm had not been restored.

III. ANALYSIS

The evidence established that the victim was shot twice, once in the chest with the gun touching her skin, and again in the back as she moved into the kitchen. This evidence is more than sufficient to establish intent to kill: even if the first shot could, in theory, have been accidental or defensive, the second shot unambiguously was neither. The fact that the victim was shot to death also established that the murderer possessed a firearm. Finally, the evidence, if viewed in the light most favorable to the prosecution, established that the victim *should* have been in possession of drugs, money, and active cell phones. However, she was found in possession of none of those things. Meanwhile, the fact that a purse and apparent bags of drugs had been deliberately emptied, and the sock in which the victim was known to keep her money had been removed and also emptied, indicated that a larceny had occurred. The obvious contemporaneousness with the murder, and the fact that the victim likely would not have removed her own sock, indicates that a robbery occurred and was committed by someone familiar with the victim's habits. In short, the

elements of the charged crimes were obviously established, leaving only the question of whether the crimes were committed by defendant.

Defendant contends that the victim must have been alive at 3:17 p.m. when a post was made from her account on Twitter. However, it is a matter of common, everyday experience that anyone with access to a person's account information, or simply to the person's unlocked electronic device, can use that person's account. It is also common, everyday experience that many people do not lock their phones or log out of social media or other services. Given the facts that the victim's active cell phones went missing and that there was a laptop computer also found in the apartment, the Twitter post is, at the most, weak evidence that the victim *might* have been alive at that time. In any event, defendant ties the Twitter post to evidence that he was called by his cousin roughly contemporaneously with the Twitter post and was picked up a quarter-mile from the apartment shortly thereafter. Even if the victim did make the Twitter post, the charged crimes could have been committed quickly, it is not implausible that a brisk walking pace could cover a quarter-mile in only a few minutes. Thus, the Twitter post proves neither that the victim was alive at 3:17 p.m. nor that it was impossible for defendant to commit the charged crimes with enough time to be picked up a quarter-mile away.

Otherwise, the evidence established that defendant was very familiar with the victim. Defendant's fingerprints and DNA were found in the apartment, and the cell phone records placed defendant in the vicinity of the victim's apartment at around the time of the murder. Indeed, defendant admitted to visiting the victim earlier that day. Thus, defendant had the ability and knowledge to commit the charged crimes. Defendant's surprising and unusual possession of a considerable amount of money immediately after leaving the victim's apartment, coupled with statements suggesting that he had just committed some manner of theft offense, implies that he was the person who committed the charged crimes. Defendant contends that the evidence is "circumstantial," but, as noted, circumstantial evidence may be sufficient to establish the elements of a crime beyond a reasonable doubt. *Carines*, 460 Mich at 757. We conclude that the evidence was sufficient for a rational trier of fact to find that defendant was the person who committed the charged crimes.

Defendant raises arguments pertaining to his sentences that we need not address in light of our affirmance of his convictions. However, we must address an issue he does not raise. The trial court appears to have properly recognized that a conviction of first-degree felony murder and a conviction of second-degree murder for the death of a single victim violates double jeopardy, as shown by its "merger" of defendant's two murder convictions. However, the trial court erred, because the correct remedy is to vacate the lesser murder conviction. *People v Herron*, 464 Mich 593, 609; 628 NW2d 528 (2001); *People v Clark*, 243 Mich App 424, 429-430; 622 NW2d 344 (2000). We therefore vacate defendant's second-degree murder conviction, and we remand this matter to the trial court to correct defendant's judgment of sentence accordingly.

Defendant's convictions of first-degree felony murder, felony-firearm, and felon-in-possession are affirmed. Defendant's conviction of second-degree murder is vacated, and this

matter is remanded for the ministerial task of correcting defendant's judgment of sentence. We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Amy Ronayne Krause
/s/ Michelle M. Rick