*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

JUSTIN RIAN-THOMPSON TROBRIDGE,

       Defendant-Appellant.

UNPUBLISHED
July 21, 2022

No. 358000
Alger Circuit Court
LC No. 19-002360-FH

Before: SAWYER, P.J., and LETICA and PATEL, JJ.

PER CURIAM.

In this interlocutory appeal, defendant appeals by leave granted[1] the trial court's order denying his motion to quash and suppress. We affirm.

## I. BASIC FACTS[2] AND PROCEDURAL HISTORY

On May 11, 2019, a teenager telephoned 911 about an attack by three neighborhood dogs upon his border collie (collie) and labrador retriever (retriever). Specifically, the teenager heard the collie cry out from his backyard only to find it being attacked by two American pit bull terriers (pit bulls). The teenager and his retriever went outside to provide assistance only to have a third pit bull attack the retriever. The teenager yelled out for help, and his neighbors came to his aid with sticks and a baseball bat. Collectively, they were able to cause the three pit bulls to retreat to defendant's home. The teenager's retriever did not appear to be injured, but his collie was

---

[1] *People v Trobridge*, unpublished order of the Court of Appeals, entered January 18, 2022 (Docket No. 358000).

[2] A DVD of police body camera footage was admitted at the preliminary examination and in response to defendant's motion to quash. There were several different segments of footage, one of which recorded defendant's arrest. These video recordings provide further context for the circumstances leading to the police contact and subsequent arrest.

bleeding. The teenager went to defendant's home and pounded on the door, but there was no answer. Two young children were playing outside near defendant's home.

Alger County Sheriff's Department Sergeant Samuel Grahovac responded to the 911 call and spoke to the teenager. The teenager advised that the pit bulls had also attacked his collie in the winter of 2018, and a report was filed with the state police because the family believed that the dogs were a threat to other neighborhood dogs, small animals, and small children. From that pit bull attack, the collie required veterinary treatment because she suffered serious injuries that required the placement of a chest tube and stitches. The state police purportedly had advised that if another incident occurred the pit bulls would have to be "put down." The teenager inquired whether he would be able to press charges against defendant. Sergeant Grahovac advised that he would write up the matter and present it to the prosecutor.

Sergeant Grahovac next interviewed the teenager's neighbor who also witnessed the pit bull assault. This neighbor advised that it was the third incident where defendant's pit bulls attacked other neighborhood dogs. Although the pit bulls had "latched" onto both of the teenager's dogs, they were able to free them. The neighbor saw that the teenager went to defendant's home, but defendant did not answer although his children, ages five and three, were playing in the alley. The neighbor also advised that the pit bulls previously chased his own dog and attacked his girlfriend's dog. The neighbor believed that his girlfriend's dog died six months later from internal injuries sustained in the pit bull attack, but apparently defendant refused to take any responsibility and denied being at fault.

Sergeant Grahovac then went to defendant's home. The front of the home was surrounded by a fenced-in area. There were steps leading to the front porch and door. Sergeant Grahovac yelled out to a small child on the porch that he needed to speak to the child's father, defendant. He was required to yell because all three pit bulls were barking in the fenced-in area. The child indicated that he could not wake his sleeping father. Suddenly, the dogs were able to pop open the fence and proceeded to charge at the sergeant. Sergeant Grahovac drew his firearm and his taser but fell to the ground as he retreated. The pit bulls attacked Sergeant Grahovac's feet, and he tried to kick them off. Neighbors saw what was happening, armed themselves with a metal pole and baseball bat, and came to his aid to stop the attack. The neighbors and defendant's two small children were able to return the pit bulls to the caged area. But the pit bulls did not respond to the children's request to enter the home and continued to bark. Sergeant Grahovac opined that defendant[3] eventually got the dogs to enter the home, but promptly closed the door.

A sliding glass door was adjacent to the fenced-in area on the front of the home. Sergeant Grahovac pounded on the door for a couple minutes and called for defendant to come out. All three pit bulls continued their non-stop barking, adding to the chaos. Eventually, defendant came out of the front door, and Sergeant Grahovac advised defendant to "come out here for a minute." Defendant came out from the fenced-in area. The sergeant explained to defendant that the pit bulls

---

[3] It was not apparent from the body camera footage who opened the front door because the door was opened only enough to allow the dogs to gain entry. Nonetheless, Sergeant Grahovac testified that it was not the children, but a taller person.

attacked the neighbor's dog and then attacked him, causing him to pull out his taser and his firearm. Defendant said he did not realize that his children let the dogs out. The sergeant concluded that defendant was intoxicated because of his slurred speech and the smell of intoxicants.[4] Sergeant Grahovac advised that because the pit bulls "tore up the neighbor's dog," they were taking them to the pound. Defendant responded, "No, you're not," and began to open the fence to return to his home. The sergeant placed his hand on the fence to stop it from opening. Sergeant Grahovac advised defendant that he could not return to the home at that time. Defendant said that he was going into the home "to talk to my f****** kids about my dogs." When Sergeant Grahovac would not allow defendant to open the gate, defendant repeatedly told him to, "Back the f*** up bro." It appeared that when attempting to open the fence, defendant tried to push Sergeant Grahovac out of the way or off the fencing to achieve his goal. The sergeant advised defendant that he would be arrested for obstruction of justice. Defendant questioned how he could have committed obstruction of justice as the sergeant attempted to place defendant in handcuffs. Once placed under arrest, defendant alternated between disbelief in his arrest and imploring Sergeant Grahovac to allow him to go into the home and retrieve his cell phone and talk to his children. Defendant called out to his children to come outside. Sergeant Grahovac kicked the open fence closed and advised defendant that he would shoot the dogs if they were let out again. Defendant then attempted to negotiate, promised to cooperate, and advised that he did not understand what was happening earlier.

Defendant was bound over on one count of resisting and obstructing a police officer, MCL 750.81d, and three counts of stray dog, MCL 287.262. Defendant moved to suppress evidence and quash his bindover, claiming that Sergeant Grahovac had improperly conducted a warrantless entry of his home and exigent circumstances did not exist to excuse the warrant requirement. The prosecution countered that the pit bulls were dangerous and represented exigent circumstances justifying the investigation and ultimately a warrantless seizure. The trial court agreed and denied defendant's motion. Defendant moved for reconsideration, asserting that exigent circumstances were not presented because the death of a human or dog did not occur and the sergeant was not injured. At best, defendant submitted that the community caretaking function was at issue but the exception was not satisfied. The prosecutor submitted that exigent circumstances were presented in light of the neighbors' reports that the pit bulls were dangerous, and Sergeant Grahovac experienced the danger firsthand when he observed the pit bulls escape the

---

[4] At the preliminary examination, defense counsel questioned whether the sergeant actually smelled intoxicants because it was not recorded in the sergeant's police report. The body camera footage reflects that the issue of intoxication was raised. After defendant was handcuffed and placed in a police vehicle, he attempted to negotiate his release by pledging his cooperation. Sergeant Grahovac noted that defendant declined the request to submit to a preliminary breath test (PBT). Defendant admitted that he declined the PBT because he had been drinking. Furthermore, on cross-examination at the preliminary examination, defendant testified that he was inebriated at the time of the incident. On the body camera footage, Sergeant Grahovac noted that he only intended to talk to defendant about the pit bulls, and defendant's actions precipitated the arrest.

fence and attack him.[5]  The trial court denied defendant's motion for reconsideration, concluding that exigent circumstances existed and palpable error was not demonstrated.

## II.  STANDARDS OF REVIEW

We review for an abuse of discretion the trial court's decision both on a motion to quash an information, *People v Zitka*, 325 Mich App 38, 43; 922 NW2d 696 (2018), and on a motion to suppress evidence, *People v Muhammad*, 326 Mich App 40, 47; 931 NW2d 20 (2018).  An abuse of discretion occurs when the trial court's decision is "outside the range of reasonable and principled outcomes," and the "trial court necessarily abuses its discretion when it makes an error of law." *Zitka*, 325 Mich App at 43-44 (quotation marks and citations omitted).  "To the extent that a lower court's decision on a motion to quash the information is based on an interpretation of the law, appellate review of the interpretation is de novo," *id*. at 44 (quotation marks and citation omitted), as is review of the trial court's conclusions of law on a motion to suppress, *Muhammad*, 326 Mich App at 47.

Issues of constitutional breadth, including whether a constructive entry occurred, are reviewed de novo.  *People v Gillam*, 479 Mich 253, 260; 734 NW2d 585 (2007).  Generally, the trial court's factual findings are reviewed for clear error.  *Id*.  Clear error occurs when the reviewing court is left with a definite and firm conviction that the trial court made a mistake.  *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014).  In light of our review of the body camera recordings, we need not rely exclusively on the trial court's conclusions regarding the video content.  *People v Kavanaugh*, 320 Mich App 293, 298; 907 NW2d 845 (2017).

## III.  EXIGENT CIRCUMSTANCES

Defendant contends the trial court erred in its determination that exigent circumstances justifying the warrantless seizure occurred.  We disagree.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizure[.]"  US Const, Am IV.  When the government obtains information by physically intruding upon a person or home, a search within the meaning of the Fourth Amendment occurs, and a warrant is required assuming no exception applies.  *People v Gingrich*, 307 Mich App 656, 661-662; 862 NW2d 432 (2014).  An arrest of a defendant without a warrant in his home is illegal unless the circumstances surrounding the arrest are exigent.  *Payton v New York*, 445 US 573, 589; 100 S Ct 1371; 63 L Ed 2d 639 (1980); *People v Snider*, 239 Mich App 393, 413-414; 608 NW2d 502 (2000).  "[T]he Fourth Amendment has drawn a firm line at the entrance to the house.  Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *People v Trapp*, 335 Mich App 141, 154-155; 966 NW2d 420 (2020) (quotation marks and citation omitted; alteration in original).  A warrantless entry into a house is presumed to be unreasonable.  *Id*. at 155.  The constructive entry doctrine expanded the *Payton* prohibition against only the actual physical entry by the police into

_____

[5] At the hearing on the reconsideration motion, the prosecutor noted that the "main aggressive dog" was terminated by court order.

-4-

a suspect's home. *Gillam*, 479 Mich at 261. In *Trapp*, this Court adopted the constructive entry doctrine:

> The constructive-entry paradigm flows from the United States Supreme Court's holding in *Payton v New York* that absent exigent circumstances, the police may not enter a home to effect an arrest unless armed with a warrant. Courts adopting the doctrine hold that when the police coerce the residents of a home to leave so that they are readily subject to arrest, that action similarly contravenes *Payton*. [*Trapp*, 335 Mich App at 157 (citation omitted).]

Although a warrantless entry of a home is generally forbidden by the Fourth Amendment, there is an exception for exigent circumstances. *Id*. at 154-155, 157.

> Pursuant to the exigent circumstances exception, . . . the police may enter a dwelling without a warrant if the officers possess probable cause to believe that a crime was recently committed on the premises, and probable cause to believe that the premises contain evidence or perpetrators of the suspected crime. The police must further establish the existence of an actual emergency on the basis of specific and objective facts indicating that immediate action is necessary to (1) prevent the imminent destruction of evidence, (2) protect the police officers or others, or (3) prevent the escape of a suspect. [*In re Forfeiture of $176,598*, 443 Mich 261, 271; 505 NW2d 201 (1993); *Trapp*, 335 Mich App at 167-168.]

Additional factors to determine if an exigency exists include:

> (1) whether a serious offense, particularly a crime of violence, is involved; (2) whether the suspect is reasonably believed to be armed; (3) whether there is clear showing of probable cause; (4) whether strong reason exists to believe the suspect is in the premises being entered; (5) whether there is a likelihood that the suspect will escape if not swiftly apprehended; (6) whether the entry is forcible or peaceful; and (7) whether the entry is at night. [*People v Oliver*, 417 Mich 366, 384; 338 NW2d 167 (1983) (quotation marks and citation omitted).]

The *Oliver* Court also noted that the prevention of the destruction of evidence, the safety of law enforcement personnel, the safety of citizens, and the ability to secure a warrant may also be considered. *Id*. When the emergency has ceased to exist, the exigent circumstances exception cannot be utilized to justify a search. *People v Tyler*, 399 Mich 564, 579; 250 NW2d 467 (1977). The existence of exigent circumstances is made on a case-by-case determination. *People v Johnson*, 113 Mich App 414, 418; 317 NW2d 645 (1982). The police may not create the exigent circumstances themselves. *Trapp*, 335 Mich App at 159. "In addition to the right to resist the illegal seizure of property, the common law explicitly recognized the right to resist an unlawful arrest." *Id*. at 164.

## IV. ANALYSIS

In light of the facts and circumstances, the trial court did not abuse its discretion by denying defendant's motion to suppress. Sergeant Grahovac received a complaint of a stray dog or dog

attack.[6] In the course of his investigation, the sergeant learned that defendant's pit bulls had attacked a collie that sustained serious injury requiring veterinary treatment in the winter of 2018. The family filed a report with the state police because of the fear that the pit bulls would harm other neighborhood dogs, small animals, and small children. On May 11, 2019, the pit bulls once again attacked the collie as well as a retriever, and the collie was bleeding. Sergeant Grahovac learned that a group of neighbors had to join together with a pole and a baseball bat to end the attack. The teenager that owned the collie attempted to contact defendant about the attack, but defendant did not answer his door. Thus, defendant's three pit bulls and his five-year-old and three-year-old sons were outside unattended purportedly as he slept. The teenager sought to press charges against defendant. Sergeant Grahovac merely responded that he would prepare a report and submit it to the prosecutor.

The teenager's neighbor confirmed the pit bull attack that day as well as two prior attacks. The neighbor divulged that his own dog was chased by defendant's pit bulls. He further advised that his girlfriend's dog was attacked by defendant's pit bulls and the dog died six months later purportedly from internal injuries. In light of this information, the sergeant proceeded to defendant's residence.

At defendant's residence, Sergeant Grahovac asked one of defendant's children to get defendant. The child responded that he could not wake defendant. The three dogs managed to open the fence and proceeded to attack Sergeant Grahovac. Sergeant Grahovac attempted to kick the pit bulls away; ultimately, the neighbors with the use of a metal pole and a baseball bat were able to stop the attack. The neighbors and defendant's children were able to return the pit bulls to the fenced-in area.

Defendant submits that any exigent circumstances ended because the pit bulls were safely secured inside his home, and Sergeant Grahovac committed a constructive entry when he essentially lured defendant out of his home to effectuate an arrest contrary to *Trapp*. The evidence reflects that defendant was purportedly asleep in his home when his pit bulls and his young children were outside unattended. When the children came outside to play, the pit bulls were able to escape the fenced-in gate and attack the collie. It was the consensus of the neighbors that this was not an isolated incident and that severe measures, the use of a metal pipe and a baseball bat, had to be employed to protect neighborhood dogs, small animals, and small children. When Sergeant Grahovac went to defendant's home to speak to him, defendant's child advised that he could not wake defendant. Because the young children were unsupervised outside, they let the pit bulls into the fenced-in gate area, and the pit bulls were able to open the gate; accordingly, the pit bulls were

---

[6] Defendant submits that Sergeant Grahovac had no grounds to arrest without a warrant under MCL 764.15(d) because the stray dog statute, MCL 287.262, was only punishable by 90 days. However, at the time of his response to the 911 call, Sergeant Grahovac learned that there was an actual dog attack and prior dog attacks had occurred by these pit bulls. The teenager and the neighbor indicated that Sergeant Grahovac was possibly dealing with a dangerous animal, see MCL 327.321(a), and the sergeant learned that firsthand once he became the subject of the pit bulls' attack. Thus, the ultimate charging decision by the prosecutor does not alter the nature of the investigation.

likely to stray again or commit another dog attack. Further, defendant did not respond to the teenager pounding on his door following the attack, and the children could not wake defendant. Therefore, it was unknown to Sergeant Grahovac if defendant was deliberately inattentive to the pit bulls and his children or if he was incapacitated in some manner. This evidence does not reflect a deliberate attempt to coerce defendant from his home to effectuate an arrest. Rather, it demonstrates an attempt by Sergeant Grahovac to determine the supervisor of the children and the dogs, if any, and the likelihood that another dog attack was imminent.

Within a short time of the child advising that he could not wake defendant, the pit bulls escaped the fenced-in gate and attacked Sergeant Grahovac. At that point in time, Sergeant Grahovac notified dispatch that the dogs needed to be removed from the home. Sergeant Grahovac went to the sliding door, banged on the glass, and called out to defendant. At least five minutes elapsed between the time the child advised that he could not wake defendant to defendant's eventual emergence from his home at Sergeant Grahovac's request. During this time, the scene was chaotic. The three pit bulls were repeatedly barking for the entire period they were outside, during the attack on the sergeant, and when initially let back into the home. At one point, one of defendant's children stood on the porch and covered his ears. It is difficult to discern how defendant could have slept during this pandemonium.

Contrary to defendant's assertion that Sergeant Grahovac deliberately coerced him to come outside merely to effectuate an arrest, it was demonstrated that the pit bulls posed a danger both to Sergeant Grahovac and to the public at large. This was not the speculative or hypothetical danger that defendant contends, but one that required immediate intervention. Although defendant's yard was fenced, he was home, and the pit bulls were taken back inside, these measures had already proven insufficient to prevent the pit bulls from escaping and attacking Sergeant Grahovac. Under the circumstances, the pit bulls continued to pose a danger during the period it would have taken to secure a warrant.

Under the exigent circumstances exception, Sergeant Grahovac was entitled to enter defendant's residence without a warrant if he possessed probable cause to believe that a crime was recently committed on the premises, and probable cause to believe that the premises contained evidence or perpetrators of the suspected crime. Additionally, an actual emergency must exist in light of specific and objective facts indicating that immediate action was necessary to protect the sergeant or others. *In re Forfeiture of $176,598*, 443 Mich at 271. Sergeant Grahovac was given information that a dog attack occurred, a prior attack had occurred approximately one-year earlier, a report had been filed with the state police, and the pit bulls were present at defendant's home without evidence that the dogs were secured and supervised to preclude another attack. The trial court's factual findings were not clearly erroneous under the circumstances, and the denial of the motion to suppress did not constitute an abuse of discretion.

Alternatively, defendant submits that even if exigent circumstances existed, it only justified seizure of the pit bulls and not defendant himself. However, defendant ignores the facts that he was the owner of the pit bulls, was intoxicated, told Sergeant Grahovac that he could *not* take the pit bulls, ignored Sergeant Grahovac's orders, and turned to go back into the house. Sergeant Grahovac was attempting to protect the public by removing the pit bulls, and defendant expressly stated that would not occur. When the sergeant indicated that defendant could not return to his home at that time and placed his hand on the fencing, defendant repeatedly attempted to physically

open the fence, cursed at the sergeant, and ordered him to back up. MCL 750.81d applies to "an individual who . . . resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties[.]" The purpose of MCL 750.81d is to protect police officers who are lawfully engaged in conducting their duties from physical interference or the threat of physical interference. See *People v Morris*, 314 Mich App 399, 411; 886 NW2d 910 (2016). Sergeant Grahovac was performing his duties to seize the dogs and protect the public, and the video recording depicts defendant's physical actions of interference. The offense of resisting and obstructing a police officer is a felony punishable by up to two years in prison, MCL 750.81d(1). Sergeant Grahovac had authority to arrest defendant without a warrant once that felony was committed in his presence. See MCL 764.15(1)(a).

Affirmed.

/s/ David H. Sawyer
/s/ Anica Letica
/s/ Sima G. Patel