*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
July 18, 2024

Plaintiff-Appellee,

v

No. 364894
Kent Circuit Court
LC No. 22-003779-FH

KEYARA SHARNICE MAJEED,

Defendant-Appellant.

Before: CAMERON, P.J., and M. J. KELLY and YATES, JJ.

PER CURIAM.

In the course of an altercation between former friends, defendant, Keyara Sharnice Majeed, grabbed Franklin Gilbert's cell phone, ran to her car, sped off, and used that cell phone to transfer $650 from Gilbert to defendant by using Gilbert's Cash App account. For those actions, defendant was convicted of: (1) larceny over $1,000 but less than $20,000, MCL 750.356(3)(a); (2) illegal use or sale of a financial transaction device, MCL 750.157q; and (3) interfering with an electronic communication, MCL 750.540(5)(a). The trial court sentenced defendant to serve concurrent jail terms of 243 days. On appeal, defendant contests the admission of testimony over objection and asserts that her due-process rights were violated during her sentencing hearing. We affirm.

## I. FACTUAL BACKGROUND

Defendant and Franklin Gilbert became best friends in ninth grade. They lived very close to each other and regularly spent time together. Also, they frequently used Cash App to pay each other for items and expenses. Their friendship remained close until Gilbert checked his credit card records and noticed iTunes purchases he had not made. In his attempt to understand those charges, he tracked the purchases to defendant. After that, the two friends did not speak for several weeks.

On February 6, 2022, defendant asked if she could use Gilbert's washing machine because hers was broken. Gilbert agreed, so defendant and her cousins went over with defendant's clothes and began washing them. By the time Gilbert came home, defendant had left, but her clothes were in the dryer. Gilbert called defendant to get her clothes, but she did not respond, so Gilbert put the clothes in a trash bag and took them to defendant's house. Gilbert left the clothes on defendant's porch with a note stating the friendship was over. That prompted defendant to go back to Gilbert's

-1-

house to talk to him. As Gilbert pulled up in his car, defendant got out of her car and tried to talk to Gilbert, but the conversation quickly turned sour.

Gilbert stepped out of his vehicle while it was running and went inside to ask his mother to call the police. Instead of calling the police, Gilbert's mother went outside to try to deescalate the situation. In the midst of the confrontation, Gilbert used his cell phone to call 911. Defendant then pulled the cell phone from Gilbert's hand and ran off with it. An audio recording of the 911 call seems to corroborate that chain of events. About an hour after defendant took Gilbert's phone, Gilbert discovered that $650 had been transferred to defendant from his Cash App account. As a result of her friendship with Gilbert, defendant knew the password for Gilbert's cell phone and, in turn, the password for his Cash App.

On June 27, 2022, the prosecution offered to dismiss the remainder of defendant's charges if she pleaded guilty to a single misdemeanor larceny charge (over $200 but less than $1,000), and the prosecution had no objection to disposition under the Holmes Youthful Trainee Act (HYTA), MCL 762.11 *et seq.*, which would have enabled defendant to resolve the case without a conviction. After defendant rejected the plea offer, the trial court told defendant to talk with her attorney again because the plea offer would not be available after that day. But defendant again rejected the plea offer and proceeded to trial.

During the trial, Gilbert explained the status of his friendship with defendant as follows:

[*Prosecution*]: I'm going to take you back to February 6th, 2022. Did you guys have an argument or something that changed the status of your best friend?

[*Gilbert*]: Yeah. Yep.

[*Prosecution*]: Okay. What happened?

[*Gilbert*]: So, back then, okay, so she came over my house to—to check on me, because we haven't talked, or wasn't talking, and for probably like a month or so, because prior to this situation, it was another situation where I have found (inaudible) a lot of like things on my credit card, like the duplicates from iTunes and it wasn't me. So, I called Apple to see who it was, and they said it was her. So then, we just stopped talking, because like she was already doing like things to jeopardize the friendship, so then—

[*Prosecution*]: On that day, did she come over to do laundry at your house?

[*Gilbert*]: Yep. Yep.

[*Prosecution*]: Okay. Did you let her do that?

[*Gilbert*]: Yeah. I allowed [her] to do that, because she said she was going through things, her washing machine and dryer was broke, and I was being a good friend, even though we wasn't speaking at that time. I was just being a good person.

* * *

[*Gilbert*]:   I told her, I left her clothes outside, and then I left a note, and then said I know I'm gone mess—mess with you anywhere, because you're—these, and then I said I—she was a thief because like prior to that, it was multiple like transactions, so I'm there saying she was like Cash-Apping.  Not Cash-Apping, but it was just like she was iTunes, and like bought a game or something like that from iTunes.

[*Prosecution*]:   Had you discovered that iTunes transaction while you were waiting for her to pick up her laundry?

[*Gilbert*]:   No, it was—it was before, it was probably—probably like around January.  That's when I discovered that it was me paying for my, like, Apple music and then it was her like paying for hers.

At that point, defense counsel objected to any testimony about iTunes as irrelevant.  The prosecutor said that she would move on, but stated that the testimony explained why Gilbert left defendant's clothes with a note.  Hence, the trial court ruled: "I'm going to overrule the objection.  I do believe it's relevant . . . .  I think this is going to background information, and it's not being offered for the truth of the matter asserted, so I think it's appropriate."  The jury ultimately found defendant guilty on all three charges, and the trial court then sentenced defendant to serve concurrent jail terms of 243 days.  Defendant now appeals of right.

## II.  LEGAL ANALYSIS

Defendant presents two issues on appeal.  First, she challenges the admission of testimony from Gilbert about the iTunes charges on Gilbert's account that purportedly resulted from actions of defendant.  Second, she seeks a resentencing hearing before a different judge because she claims that the trial court punished her in imposing sentence for rejecting a plea offer and proceeding to trial.  We will address these arguments in turn.

## A.  ADMISSION OF iTUNES TESTIMONY

Defendant faults the trial court for admitting Gilbert's testimony as to iTunes purchases on his account that defendant purportedly made.  "To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal."  *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019).  At trial, defense counsel objected to the challenged testimony based on relevance, but defense counsel did not claim the testimony constituted prior bad-acts evidence or was substantially more prejudicial than probative.  Hence, defendant's challenge based on relevance is preserved, but her arguments about bad-acts evidence and prejudice are not preserved.  See *id*.  Accordingly, we can review the trial court's relevance ruling for an abuse of discretion, *id*. at 251, but the arguments predicated on the grounds of bad-acts evidence under MRE 404(b) and prejudice under MRE 403 must meet the plain-error standards.  *Id*. at 252.  Applying those standards, we must consider whether defendant is entitled to relief on any of the theories she has advanced.

-3-

### 1. RELEVANCE UNDER MRE 401 AND 402

Under MRE 402,[1] relevant evidence is generally admissible, and irrelevant evidence is not admissible. *People v Starr*, 457 Mich 490, 497; 577 NW2d 673 (1998). According to MRE 401, " '[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." In this case, Gilbert's challenged testimony was offered to explain why: (1) defendant and Gilbert were no longer friends; (2) Gilbert left defendant's clothes on her porch; and (3) defendant drove to Gilbert's house and started yelling at him. That testimony was relevant because it explained why defendant and Gilbert had the argument that led to the criminal charges against defendant. See MRE 401. Thus, the trial court's admission of that testimony from Gilbert was not an abuse of discretion because the trial court's ruling was within the range of principled outcomes. *Thorpe*, 504 Mich at 252. Accordingly, the trial court's decision to admit that testimony from Gilbert over a relevance objection ought not be disturbed on appeal. See *id*. ("A decision on a close evidentiary question ordinarily cannot be an abuse of discretion.").

### 2. PREJUDICE UNDER MRE 403 AND OTHER ACTS UNDER 404(b)

Defendant's unpreserved objections to Gilbert's testimony focus on prejudice under MRE 403 and impermissible other acts under MRE 404(b). According to MRE 403: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Evidence is unfairly prejudicial if a danger exists that marginally probative evidence will be given preemptive weight by the jury. *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998). Under MRE 404(b)(1), evidence of other crimes, wrongs, or acts of a defendant "is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material[.]"

Gilbert's testimony about his iTunes account was not off limits under MRE 404(b) because Gilbert's testimony was not admitted to prove defendant's character in order to show that she acted in conformity with that character. Rather, the testimony was offered to explain the breakdown in the relationship between Gilbert and defendant. Because the testimony was admitted for a purpose other than to prove defendant's character, its admissibility is not prohibited by MRE 404(b).

Turning to the issue of prejudice, Gilbert's testimony about why the relationship between defendant and Gilbert broke down was not a particularly important fact at trial, so there was some danger that the marginally probative evidence would be given undue or preemptive weight by the jury because of its similarity to the charged crime. But even if the trial court committed plain error by admitting Gilbert's iTunes testimony, the error was harmless because defendant has failed to

---

[1] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See Administrative Order No. 2021-10, ___ Mich ___ (2023). This opinion relies on the version of the rules in effect at the time of trial.

show that her substantial rights were affected by its admission. The record contains overwhelming evidence that defendant stole Gilbert's cell phone and, shortly thereafter, she sent herself money from Gilbert's Cash App account. Gilbert's mother and defendant's cousins testified that, although they were not directly involved in the argument between defendant and Gilbert, they witnessed it. Thus, there was no question that defendant was near Gilbert and arguing with him just before his cell phone was stolen. Also, Gilbert, his mother, and defendant's cousins testified that defendant believed that Gilbert owed her money. That belief was corroborated by the 911 recording in which defendant can be heard asking Gilbert for money. Gilbert and his mother testified that defendant opened Gilbert's car door, grabbed Gilbert's cell phone, ran away, and sped off. Approximately one hour later, Gilbert discovered that $650 had been transferred to defendant from his Cash App account. Because defendant and Gilbert had been best friends, she knew the passwords for his cell phone and his Cash App account. Because defendant has failed to show that any error affected the outcome of her trial or that she is actually innocent, defendant is not entitled to any relief on plain-error review. See *Thorpe*, 504 Mich at 252-253.

## B. SENTENCING CONSIDERATIONS AND JUDICIAL REASSIGNMENT

Defendant not only contests her concurrent sentences of 243 days in jail, but also demands resentencing before a different judge because she claims that the trial court improperly held against her the rejection of the plea offer. Defendant did not raise that matter before the trial court, so the issue is not preserved. *People v Heft*, 299 Mich App 69, 78; 829 NW2d 266 (2012). But a request for remand to a new judge (if a remand is warranted) may be raised in the first instance on appeal. See *United States v Tucker*, 78 F3d 1313, 1323-1324 (CA 8, 1996).[2] "Absent actual personal bias or prejudice against either a party or the party's attorney," however, a judge cannot be disqualified. *People v Wells*, 238 Mich App 383, 391; 605 NW2d 374 (1999). "A party that challenges a judge for bias must overcome a heavy presumption of judicial impartiality." *Id*.

"A sentencing court cannot base a sentence even in part on a defendant's refusal to admit guilt[,]" *People v Dobek*, 274 Mich App 58, 104; 732 NW2d 546 (2007), but "evidence of a lack of remorse can be considered in determining an individual's potential for rehabilitation." *Id*. This Court must analyze three factors to "determine whether sentencing was improperly influenced" by defendant's failure to admit guilt: "(1) the defendant's maintenance of innocence after conviction; (2) the judge's attempt to get the defendant to admit guilt; and (3) the appearance that had the defendant affirmatively admitted guilt, his sentence would not have been so severe." *Id*. (quotation marks and citation omitted). "[I]f there is an indication of the three factors, then the sentence was likely to have been improperly influenced by the defendant's persistence in his innocence." *Id*. (quotation marks omitted). In *People v Conley*, 270 Mich App 301, 316; 715 NW2d 377 (2006), this Court ruled that the reliance on a defendant's "refusal to admit guilt was a constitutional error because it violated [the defendant's] constitutional right against self-incrimination."

Defendant seems to suggest that she maintained her innocence throughout sentencing, but neither defense counsel nor defendant asserted innocence at sentencing. In fact, defense counsel

---

[2] We need not follow the decisions of federal circuit courts, but we are free to follow the authority that we deem the most appropriate. *People v Gillam*, 479 Mich 253, 261; 734 NW2d 585 (2007).

commented that "[t]his was kind of a one quick flash, maybe two minutes, of poor decision making in my client's life," and defendant explained that she understood the seriousness of this case and believed that she could "get it together" with a second chance. The trial court did not try to make defendant admit guilt at sentencing. Instead, defense counsel requested that defendant receive the benefit of sentencing under HYTA, MCL 762.11 *et seq.*, even though she was found guilty at trial. In response, the trial court explained that HYTA was no longer within the court's authority to grant because defendant did not accept the plea offer.[3] In imposing the sentence, the trial court stated:

> *My sentence does not reflect the fact that you went to trial at all, ma'am. You have the right to do that.* But I do recognize that you made a very poor choice here. As I previously said, you could have resolved this matter without anything on your record, without any jail time whatsoever, by a small acknowledgement of what you did. You had not accepted any responsibility for what you did in this matter as far as that I can see. [Emphasis added.]

Rather than attempting to get defendant to admit guilt, the trial court simply explained that by not accepting the plea offer, defendant rendered herself ineligible for the benefits flowing from HYTA. Also, the trial court's reference to defendant's lack of acceptance of responsibility can be interpreted as a concern about defendant's lack of remorse, which the trial court may consider "in determining an individual's potential for rehabilitation." *Dobek*, 274 Mich App at 104 (citation omitted). The trial court stated that defendant's sentence did not reflect her decision to go to trial. The only time that a lesser sentence was discussed was when defense counsel requested disposition under HYTA even though defendant was found guilty at trial. The trial court did not even mention defendant's plea offer until defense counsel did, and then the trial court did no more than explain why HYTA was no longer available. Thus, every relevant factor demonstrates that, in imposing sentence, the trial court did not improperly consider defendant's refusal to admit guilt.

Affirmed.

/s/ Thomas C. Cameron
/s/ Michael J. Kelly
/s/ Christopher P. Yates

---

[3] MCL 762.11(2) provides, in pertinent part, as follows:

> Beginning October 1, 2021, except as provided in subsections (3) and (4), *if an individual pleads guilty* to a criminal offense, committed on or after the individual's eighteenth birthday but before his or her twenty-sixth birthday, the court of record having jurisdiction of the criminal offense may, without entering a judgment of conviction and with the consent of that individual, consider and assign that individual to the status of youthful trainee. [Emphasis added.]