*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

HEATHER DARLENE CHILDERS,

Defendant-Appellant.

UNPUBLISHED
May 21, 2026
10:23 AM

No. 366350
Montcalm Circuit Court
LC No. 2022-028785-FH

Before: WALLACE, P.J., and LETICA and FEENEY, JJ.

PER CURIAM.

Defendant appeals by right her jury-trial convictions and resulting sentence for first-degree home invasion, MCL 750.110a(2); assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84; and aggravated domestic violence, MCL 750.81a(2). The trial court sentenced defendant to serve concurrent terms of 54 months to 20 years' imprisonment, 54 months to 10 years' imprisonment, and 12 months' imprisonment, respectively. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of defendant's assault of her father, Jerry Andrews, and his caregiver, Karma Johnson, on August 31, 2021. Johnson had been working for Andrews since her husband passed in 2019. Johnson performed housework, cooking, and laundry services for Andrews, and additionally helped make sure that Andrews took his medication. Johnson and Andrews had become close friends over the years. Defendant lived in the lakefront vacation cottage at issue for a period of time during her childhood, Andrews eventually came to live there full-time, and defendant maintained a bedroom there as of August 31, 2021. Defendant generally had permission to come and go freely, but she had an unfriendly relationship with Johnson, so she tried to visit her father when Johnson was not present.

On the day of the assault, defendant parked her car behind Johnson's car, blocking it in, and then approached the house while shouting. Johnson locked the front door and then asked Andrews to go out and speak with defendant and either ask her to leave or to allow Johnson to leave. Andrews went outside and had a brief conversation with defendant in which he told defendant that she needed to leave. During this conversation, Andrews was standing on the porch,

but defendant was not. When Andrews thereafter turned around to go back inside the house, defendant then angrily ran up onto the porch behind him with a paring knife (with a two-inch blade) in her hand, seemingly to stab Andrews in the back. Johnson, who had been watching from the doorway, stepped out and blocked the knife with her right hand, resulting in it cutting her hand between her middle and forefinger.

In the ensuing altercation, Johnson gained possession of the knife and dropped it down the gap between the porch floorboards. Meanwhile, Andrews and defendant fell down onto the porch floor, Andrews placed defendant in a headlock, and defendant bit him on both hands. Andrews also suffered an injury to his foot, which was understood to be the result of striking a nail on the porch. Defendant, Andrews, and Johnson struggled on the porch for a short time before Johnson and Andrews managed to get back inside the house with the help of a neighbor, who also called 911. Johnson held the storm door closed to keep defendant from entering the house and tried to make sure Andrews was okay in light of the injury to his foot. Meanwhile, defendant and Andrews were yelling at each other, with Andrews repeatedly telling defendant to leave. Defendant then was able to pull the door open (damaging it in the process), entered the premises, and assaulted and pulled Johnson back out onto the porch. Johnson fell against a grill on the porch as defendant continued to attack her. Defendant ceased the attack when the intervening neighbor "called her off," which permitted Johnson to get back inside the residence. Johnson suffered injuries to her knee and right leg, as well as a broken toe and gash on her left foot in her struggle with defendant.

Michigan State Police troopers, Trevor Rogers and Elie Awad, arrived on the scene in response to the neighbor's 911 call. Rogers found defendant sitting at a picnic table on the deck outside and Johnson and Andrews were inside the house. There was "[b]lood everywhere": a trail of blood on the porch, blood on the inside and outside door handles, and blood "throughout the interior of the house." The troopers interviewed defendant, Johnson, and Andrews; retrieved the knife from under the porch; and took pictures. Trooper Awad then took defendant to the hospital for her injuries, which included a cut on her upper-left arm that defendant told Trooper Awad was probably sustained by scraping against the storm door when she was pushed out of the house.

Defendant was subsequently charged with AWIGBH; felonious assault, MCL 750.82; first-degree home invasion; and aggravated domestic violence. During jury selection, a large venire pool was summoned and multiple juries were selected for multiple trials that were to occur before the trial judge over a period of time, thereby "reducing the amount of times that the whole panel has to come in." At the end of jury selection, the trial judge noted that at least one juror had also been selected that day to serve on a jury in a different case. The judge asked the jurors who else among them had also been selected that day to serve on another jury. A total of four jurors indicated that they had been selected to serve on other juries. The judge excused those four from jury selection for the rest of the day, but noted that the trial court's other judge was conducting jury selection again in approximately 3 weeks and indicated that those four jurors would be summoned again for jury selection on that date.

During opening statement and closing argument at trial, the prosecution suggested that defendant premeditated the assault based upon her having brought the paring knife with her. Defense counsel asserted that defendant brought the knife in order to eat pickled bologna that she brought (along with packages of cheese) to Andrews's home. The jury acquitted defendant of

felonious assault but found her guilty of the other three charges and she was subsequently sentenced.

Defendant later moved for a new trial based upon ineffective assistance of counsel. Defendant contended that defense counsel was ineffective in failing to introduce a police photograph at trial that showed defendant sitting at a picnic table on the deck of Andrews's home in front of an open jar of pickled bologna and a plastic grocery bag containing packages of cheese. Defendant also asserted that defense counsel was ineffective in failing to request a mitigating-circumstances instruction with respect to the AWIGBH charge and for failing to request a mistake of fact instruction with respect to first-degree home invasion. The trial court denied defendant's motion following a *Ginther*[1] hearing.

Defendant subsequently filed a motion in this Court seeking a remand for factual development regarding whether several of defendant's jurors had been qualified to serve. Julianne Cuneo, the Chief Investigator at the State Appellate Defender Office, had discovered that several of the jurors in defendant's trial served as jurors in at least one of two unrelated criminal trials in the months preceding defendant's trial, thereby prompting the motion. In lieu of granting remand, this Court accepted Cuneo's affidavit, email communications from the trial court, and the dockets from the other trials as expansions of the record on appeal.[2]

Defendant now appeals.

## II. ANALYSIS

## A. UNQUALIFIED JURORS

We first consider defendant's argument that she is entitled to a new trial because one or more of her jurors were unqualified. Defendant did not preserve this issue by raising it in the trial court, i.e., by challenging the juror for cause. See *People v King*, 512 Mich 1, 9-10; 999 NW2d 670 (2023); MCR 2.511(D). We review such issues for plain error affecting substantial rights. *People v Beck*, 510 Mich 1, 27; 987 NW2d 1 (2022). "Plain error exists when 1) an error . . . occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. (quotation marks, brackets, and citation omitted; ellipsis in original). "[R]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. (quotation marks, brackets, and citation omitted).

Criminal defendants have a constitutional right to be tried by an impartial jury. US Const, Am VI; Const 1963, art 1, § 20. Jurors are presumed to be qualified and the burden of proving that a juror is not qualified rests on the party alleging disqualification. *People v Johnson*, 245

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[2] *People v Childers*, unpublished order of the Court of Appeals, entered October 21, 2024 (Docket No. 371910).

Mich App 243, 256; 631 NW2d 1 (2001). MCR 2.511[3] governs impaneling the jury and provides, in relevant part, as follows:

> (D) Discharge of Unqualified Juror. When the court finds that a person in attendance at court as a juror is not qualified to serve as a juror, the court shall discharge him or her from further attendance and service as a juror.
>
> (E) Challenges for Cause. The parties may challenge jurors for cause, and the court shall rule on each challenge. A juror challenged for cause may be directed to answer questions pertinent to the inquiry. It is grounds for a challenge for cause that the person:
>
> (1) is not qualified to be a juror;
>
> (2) is biased for or against a party or attorney;
>
> (3) shows a state of mind that will prevent the person from rendering a just verdict, or has formed a positive opinion on the facts of the case or on what the outcome should be;
>
> (4) has opinions or conscientious scruples that would improperly influence the person's verdict;
>
> (5) has been subpoenaed as a witness in the action;
>
> (6) has already sat on a trial of the same issue;
>
> (7) has served as a grand or petit juror in a criminal case based on the same transaction;
>
> (8) is related within the ninth degree (civil law) of consanguinity or affinity to one of the parties or attorneys;
>
> (9) is the guardian, conservator, ward, landlord, tenant, employer, employee, partner, or client of a party or attorney;
>
> (10) is or has been a party adverse to the challenging party or attorney in a civil action, or has complained of or has been accused by that party in a criminal prosecution;
>
> (11) has a financial interest other than that of a taxpayer in the outcome of the action;
>
> (12) is interested in a question like the issue to be tried.

---

[3] See also MCR 6.412.

Chapter 13 of the Revised Judicature Act, MCL 600.1300 *et seq.*, governs juror qualification. In pertinent part, MCL 600.1307a requires that prospective jurors must "[n]ot have served as a petit or grand juror in a court of record during the preceding 12 months." MCL 600.1307a(1)(d). This requirement is meant to exclude "professional" jurors who do not take jury service seriously but nevertheless pursue jury service "from a disinclination to steady employment, and sometimes from more reprehensible motives." *Burden v People*, 26 Mich 162, 164 (1872).

When an unqualified juror serves in violation of MCL 600.1307a, MCL 600.1354(1) provides, in relevant part, as follows:

> Failure to comply with the provisions of this chapter shall not be grounds for a continuance nor shall it affect the validity of a jury verdict unless the party requesting the continuance or claiming invalidity has made timely objection and unless the party demonstrates actual prejudice to his cause and unless the noncompliance is substantial. An objection made at the day of a scheduled trial shall not be considered timely unless the objection, with the exercise of reasonable diligence, could not have been made at an earlier time.

Accordingly, a new trial is not warranted on the ground that one or more jurors are unqualified for having already served as jurors in the last 12 months unless: (1) defendant made a timely objection, (2) defendant was actually prejudiced, and (3) the noncompliance was substantial.

Defendant argues that the seating of such unqualified jurors in her trial was a structural error that requires automatic reversal or, at least, creates a presumption of prejudice. We disagree. Structural errors are violations of the basic constitutional framework in which a criminal trial proceeds. See *King*, 512 Mich at 10 n 5, citing *Weaver v Massachusetts*, 582 US 286, 294-295; 137 S Ct 1899; 198 L Ed 2d 420 (2017). Preserved, structural errors are not subject to harmless-error analysis and require automatic reversal, whereas unpreserved structural errors create a rebuttable presumption of prejudice and shift the burden to the prosecution to present "specific facts that affirmatively demonstrate that, despite the error, the overall fairness, integrity, and reputation of the proceedings were preserved." *King*, 512 Mich at 10 (quotation marks and citation omitted).

Our Supreme Court previously found no structural error when a juror who served in a defendant's trial was unqualified pursuant to MCL 600.1307a(1)(e) because that juror was a felon. "[T]here is no constitutional right to have a jury free of convicted felons. Therefore, that a convicted felon sat as a juror on defendant's jury did not constitute a structural error." *People v Miller*, 482 Mich 540, 556; 759 NW2d 850 (2008). Where, as here, the basis for a juror's disqualification is merely statutory, defendant must demonstrate actual prejudice to their substantial rights to be entitled to a new trial. *Id.* at 547-548, citing MCL 600.1354(1). The statutory basis for disqualification "must be such as to reasonably indicate that a fair and impartial trial was not had . . . ." *Miller*, 482 Mich at 548-549 (quotation marks and citations omitted). In other words, defendant must demonstrate this unpreserved error was plain error in order for it to be grounds for a new trial. See *id.* at 547-548, 559; *Beck*, 510 Mich at 27.

Turning to the plain-error analysis, the record shows that the trial court was aware that several jurors selected for defendant's trial were also selected to serve on other juries, and the

documentation submitted by defendant shows that those jurors indeed served on other juries within the 12 months before defendant's trial. The court's jury-selection system appears to all but guarantee the seating of unqualified jurors, and the court knew or should have known that several of defendant's jurors were unqualified. We conclude that this was a clear, obvious error. See *id*.

However, defendant has failed to overcome the presumption that her jurors were impartial, i.e., that the plain error affected substantial rights. See *Miller*, 482 Mich at 550-551, 559. Investigator Cuneo's affidavit, assuming that it could be properly considered,[4] does not contain anything to suggest that the unqualified jurors were partial or failed to take their duty seriously. See *Burden*, 26 Mich at 164. At most, the record reflects that some jurors were concerned about having to take time off work to serve in multiple trials. Defendant only offers speculation that recent jury service might have affected the jurors' attitudes regarding the criminal justice system or that inexperienced jurors might have deferred to experienced jurors during deliberations. "There is simply no evidence that [the unqualified jurors] improperly affected any other jurors." *Miller*, 482 Mich at 554. Therefore, defendant cannot show that the trial court's plain error of seating unqualified jurors in her trial actually prejudiced defendant by violating her substantial right to an impartial jury. See *id*. at 547-548, 559; *Beck*, 510 Mich at 27.

Defendant is not entitled to a new trial on the ground that one or more of her jurors were unqualified.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

We next consider defendant's several arguments that she is entitled to a new trial on the basis of ineffective assistance of counsel. "Claims of ineffective assistance of counsel present mixed questions of fact and law. Factual findings are reviewed for clear error, and legal conclusions are reviewed de novo." *People v Urbanski*, 348 Mich App 90, 97; 17 NW3d 430 (2023) (citation omitted).

"Criminal defendants are entitled to the assistance of counsel under both the Michigan and United States Constitutions." *People v Yeager*, 511 Mich 478, 488; 999 NW2d 490 (2023). "Effective assistance of counsel is presumed," and a "defendant bears a heavy burden of proving otherwise." *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). To obtain a new trial on a claim of ineffective assistance, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that [the] outcome [of the defendant's trial] would have been different." *Yeager*, 511 Mich at 488 (quotation marks and citation omitted). " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *People v Ackley*, 497 Mich 381, 389; 870 NW2d 858 (2015), quoting *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). We presume that defense counsel's strategic decisions at trial were sound, and we will evaluate defense counsel's performance without the benefit of hindsight. *Urbanski*, 348 Mich App at 97. However, we "cannot insulate the review of counsel's

---

[4] Generally, a jury's verdict cannot be impeached by the affidavit of a nonjuror that is based on hearsay. See *Shiner v Detroit*, 150 Mich App 420, 424-425; 387 NW2d 872 (1986).

performance by calling it trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). "Failure to raise a futile objection or advance a meritless argument does not constitute ineffective assistance of counsel." *People v Isrow*, 339 Mich App 522, 532; 984 NW2d 528 (2021).

## 1. THE BOLOGNA PHOTOGRAPH

Defendant first argues that defense counsel was ineffective for failing to present a photograph at trial that was taken by the police on the day of the incident and shows defendant sitting at a picnic table in front of Andrews's home with an open jar of pickled bologna and plastic grocery bag containing packages of cheese. Defendant asserts that defense counsel was ineffective because the bologna photograph would have undermined the prosecution's assertion that defendant went to Andrews's home with a knife with the intent to commit assault and countered Johnson's narrative that defendant began the incident immediately upon her arrival. We disagree.

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401.[5] Evidence that is relevant is admissible unless the United States Constitution, the Michigan Constitution, the Michigan Rules of Evidence, or another rule prescribed by the Michigan Supreme Court provides otherwise. MRE 402. "Irrelevant evidence is not admissible." *Id*.

Crimes can be divided into two categories on the basis of the requisite intent: general intent crimes and specific intent crimes.

> A crime requiring a particular criminal intent beyond the act done is generally considered a specific intent crime; whereas, a general intent crime merely requires the intent to perform the physical act itself. Put another way, "specific intent" is often used to designate a special mental element which is required above and beyond any mental state required with respect to the *actus reus* of the crime. [*People v Fennell*, 260 Mich App 261, 266; 677 NW2d 66 (2004) (quotation marks and citations omitted).]

MCL 750.81a(2) provides that a person commits the crime of aggravated domestic violence when he or she "assaults . . . a resident or former resident of the same household without a weapon and inflicts serious or aggravated injury upon that individual without intending to commit murder or to inflict great bodily harm less than murder . . . ."

MCL 750.84 sets out the offense of AWIGBH. In relevant part, MCL 750.84(1)(a) prohibits the assault of "another person with intent to do great bodily harm, less than the crime of murder." "The elements of assault with intent to do great bodily harm less than murder are: (1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an

---

[5] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See ADM File No. 2021-10, 512 Mich lxiii (2023). We rely on the version of the rules in effect at the time of trial.

intent to do great bodily harm less than murder." *People v Brown*, 267 Mich App 141, 147; 703 NW2d 230 (2005) (quotation marks, citation, and emphasis omitted). "This Court has defined the intent to do great bodily harm as an intent to do serious injury of an aggravated nature." *Id*. (quotation marks and citation omitted). "AWIGBH is a specific intent crime." *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014). "Intent to cause serious harm can be inferred from the defendant's actions, including the use of a dangerous weapon or the making of threats." *Id*. at 629. Moreover, "injuries suffered by the victim may also be indicative of a defendant's intent." *Id*.

MCL 750.110a(2) defines the crime of first-degree home invasion as follows:

A person who breaks and enters a dwelling with intent to commit a felony, larceny, or assault in the dwelling, a person who enters a dwelling without permission with intent to commit a felony, larceny, or assault in the dwelling, or a person who breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a felony, larceny, or assault is guilty of home invasion in the first degree if at any time while the person is entering, present in, or exiting the dwelling either of the following circumstances exists:

(a) The person is armed with a dangerous weapon.

(b) Another person is lawfully present in the dwelling.

As explained by our Supreme Court, first-degree home invasion can be committed in several different ways involving alternative elements:

Element One: The defendant *either*:

1. breaks and enters a dwelling or

2. enters a dwelling without permission.

Element Two: The defendant *either*:

1. intends when entering to commit a felony, larceny, or assault in the dwelling or

2. at any time while entering, present in, or exiting the dwelling commits a felony, larceny, or assault.

Element Three: While the defendant is entering, present in, or exiting the dwelling, *either*:

1. the defendant is armed with a dangerous weapon or

2. another person is lawfully present in the dwelling. [*People v Wilder*, 485 Mich 35, 43; 780 NW2d 265 (2010).]

In this case, the jury was instructed consistent with M Crim JI 25.2a that:

> In Count 3, the Defendant is charged with home invasion in the first degree. To prove this charge, the Prosecutor must prove each of the following elements beyond a reasonable doubt:
>
> First, that the Defendant broke into a dwelling. It does not matter whether anything was actually broken; however, some force must have been used. Opening a door, raising a window, and taking off a screen are all examples of enough force to count as a breaking. Entering a dwelling through an already open door or window without using any force does not count as a breaking.
>
> Second, that the Defendant entered the dwelling. It does not matter whether the Defendant got her entire body inside. If the Defendant put any part of her body into the dwelling after the breaking, that is enough to count as an entry.
>
> Third, that when the Defendant broke and entered the dwelling, she intended to commit assault.
>
> Fourth, that when the Defendant entered, was present in, or was leaving the dwelling, either of the following circumstances existed:
>
> (a) she was armed with a dangerous weapon, and/or
>
> (b) another person was lawfully present in the dwelling.

The prosecution suggested in opening statement and closing argument at trial that defendant had premeditated the assault on the basis of her having brought the paring knife with her to Andrews's home. Premeditation is not an element of any of the crimes that defendant was convicted of, but bringing the knife according to a premeditated plan could evince defendant's specific intent to cause great bodily harm or commit assault inside Andrews's home. See *People v Dykhouse*, 418 Mich 488, 515; 345 NW2d 150 (1984) (BOYLE, J., concurring).[6] Therefore, the bologna photograph was relevant with respect to the AWIGBH and first-degree home invasion charges because they are specific intent crimes, whereas aggravated domestic violence only requires general intent. See MCL 750.81a(2); *Fennell*, 260 Mich App at 266. However, we are not convinced that presenting the bologna photograph to prove that defendant did not bring the paring knife with premeditated ill intent would have made a difference in this case. With respect to AWIGBH, defendant's specific intent to cause great bodily harm was already evident in the fact that defendant attacked Johnson and Andrews with a knife and the injuries defendant inflicted upon them. See *Stevens*, 306 Mich App at 629. Regarding first-degree home invasion, defendant's intent to commit assault inside Andrews's home was similarly evident in the fact that defendant

---

[6] Concurring opinions are not binding authority, but they may be persuasive. See *People v Lampe*, 327 Mich App 104, 115 n 4; 933 NW2d 314 (2019).

forced the door open (damaging it in the process) to enter Andrews's home and continued her assault upon Johnson.

We are similarly not convinced that the bologna photograph would have made any difference as it relates to Johnson's testimony. Defense counsel's theory is that defendant sat at Andrews's picnic table to eat before the incident occurred. However, this narrative was not presented to the jury because defendant chose not to testify. Standing alone, the only thing that the bologna photograph shows is that there was an open jar of pickled bologna, as well as cheese, on Andrews's picnic table by the time the police arrived on August 31, 2021. That is, without some corroborating evidence, the bologna photograph was effectively irrelevant.

Because presenting the bologna photograph would have neither negated defendant's specific intent nor meaningfully contradicted Johnson's testimony, defense counsel's decision to forgo presenting the photograph at trial in favor of focusing on other evidence and arguments was a reasonable strategic decision; further, defendant has not demonstrated a reasonable probability of a different outcome had defense counsel presented the photograph. See *Yeager*, 511 Mich at 488. Defense counsel was not ineffective in this regard.

## 2. FAILURE TO REQUEST JURY INSTRUCTIONS

Defendant next argues that defense counsel was ineffective for failing to request a mitigating-circumstances instruction as to the AWIGBH charge, instructing the jury that defendant could be acquitted if the jury found that she acted under the influence of a heightened emotional state. See M Crim JI 17.4. She also argues that defense counsel was ineffective in failing to request a mistake of fact jury instruction as to the first-degree home invasion charge because defendant mistakenly believed that she had permission to enter Andrews's home. We disagree with both these contentions.

"A defendant in a criminal trial is entitled to have a properly instructed jury consider the evidence against him or her." *People v Guajardo*, 300 Mich App 26, 34; 832 NW2d 409 (2013) (quotation marks and citation omitted). "A court must properly instruct the jury so that [the jury] may correctly and intelligently decide the case. The instruction to the jury must include all elements of the crime charged, and must not exclude from jury consideration material issues, defenses or theories if there is evidence to support them." *People v Traver*, 502 Mich 23, 31; 917 NW2d 260 (2018) (quotation marks and citations omitted; alteration in original). "[F]ailure to request a jury instruction may constitute an unreasonably deficient level of performance." *Yeager*, 511 Mich at 490. But a defendant is not entitled to a jury instruction that is not supported by the evidence. *People v Mills*, 450 Mich 61, 81; 537 NW2d 909, mod 450 Mich 1212 (1995).

### a. MITIGATING CIRCUMSTANCES

A mitigating-circumstances defense is typically raised in a homicide case, to mitigate a charge of murder to manslaughter, see *People v Pouncey*, 437 Mich 382, 389; 471 NW2d 346 (1991), or in assault with intent to commit murder cases, see *People v Mitchell*, 149 Mich App 36, 38-39; 385 NW2d 717 (1986). The law recognizes that a defendant is less culpable when the defendant acts under the influence of an emotional disturbance so strong that it "distort[s] the defendant's practical reasoning." *Pouncey*, 437 Mich at 389. The defendant's emotional state

-10-

must have been the result of adequate provocation. *Id*. Provocation is adequate if it "would cause a reasonable person to lose control." *Id*. However, "[n]ot every hot-tempered individual who flies into a rage at the slightest insult can claim [adequate provocation]." *Id*. Whether provocation is adequate is generally a question of fact for the jury, but words alone are typically insufficient to constitute adequate provocation. *Id*. at 390-391. In keeping with this authority, M Crim JI 17.4 provides as follows:

> (1) The defendant can only be guilty of the crime of assault with intent to commit murder if [he / she] would have been guilty of murder had the person [he / she] assaulted actually died. If the assault took place under circumstances that would have reduced the charge to manslaughter if the person had died, the defendant is not guilty of assault with intent to commit murder.

> (2) Voluntary manslaughter is different from murder in that for manslaughter, the following things must be true:

> (3) First, when the defendant acted, [his / her] thinking must have been disturbed by emotional excitement to the point that an ordinary person might have acted on impulse, without thinking twice, from passion instead of judgment. This emotional excitement must have been caused by something that would cause an ordinary person to act rashly or on impulse. The law does not say what things are enough to do this. That is for you to decide. [If the defendant is mentally or emotionally impaired in some way, you may consider that.]

> (4) Second, the killing itself must have resulted from this emotional excitement. The defendant must have acted before a reasonable time had passed to calm down and before reason took over again. The law does not say how much time is needed. That is for you to decide. The test is whether a reasonable time passed under the circumstances of this case.

> (5) If you find that the crime would have been manslaughter had the person died, then you must find the defendant not guilty of assault with intent to murder . . . .

The first flaw with defendant's argument is that M Crim JI 17.4 applies specifically to the crime of assault with intent to murder, not AWIGBH, and AWIGBH "is not mitigated to a lesser offense because of the existence of provocation." *Mitchell*, 149 Mich App at 39. Even though *Mitchell* is a decision of this Court from before 1990, "MCR 7.215(J)(1) does not state . . . that older cases are not precedentially binding," on this Court, only that published decisions issued on or after November 1, 1990 must be followed. *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114; 923 NW2d 607 (2018). Even though *Mitchell* does not strictly bind this Court, the trial court was certainly bound to follow its precedent. Further, this Court's post-November 1, 1990 decision in *Stevens*, 306 Mich at 628-629, confirms that *Mitchell* remains good law. Accordingly, defense counsel's request for a mitigating-circumstances instruction would have been meritless, so defense counsel was not ineffective for not requesting it. See *Isrow*, 339 Mich App at 532.

The second flaw with defendant's argument is that the evidence at trial did not support a mitigating-circumstances instruction. See *Mills*, 450 Mich at 81. Although defense counsel suggested that defendant's family situation was emotionally charged, defense counsel's arguments were not evidence. See *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004). The record reflects that defendant was either immediately upset upon arriving at Andrews's home, absent any provocation, or that defendant became upset by Andrews telling defendant that she needed to leave. Even assuming that defendant was so upset that it impaired her rational thinking, no reasonable jury could find adequate provocation on this record. See *Pouncey*, 437 Mich at 389-391. Defense counsel was not ineffective for failing to request an instruction unsupported by the evidence. See *Isrow*, 339 Mich App at 532.

## b. MISTAKE OF FACT

As stated earlier, defendant was charged with first-degree home invasion on the basis of the following elements: (1) defendant broke and entered the dwelling; (2) defendant intended to commit assault therein; and (3) defendant was either armed with a dangerous weapon, another person was lawfully present in the dwelling, or both.

Depending upon which of the two alternative elements is charged regarding element two, first-degree home invasion can be a crime of general intent or specific intent. See *Fennell*, 260 Mich App at 266; *Wilder*, 485 Mich at 43. First-degree home invasion requires specific intent when a defendant is charged with entering a dwelling without permission with the specific intent to commit a felony, larceny, or assault inside the dwelling. In contrast, if a defendant had no intent to commit a felony, larceny, or assault at the time the defendant entered the dwelling, but the defendant nonetheless committed such a crime therein, then first-degree home invasion only requires the general intent to enter the dwelling.

The mistake of fact defense requires that the defendant was honestly and reasonably mistaken about a fact, not the law, and that defendant's conduct would not have satisfied the elements of the charged offense had the relevant facts been as the defendant mistakenly believed. See 21 Am Jur 2d, Criminal Law, § 148. "Mistake of fact is a defense when it negates the existence of the mental state essential to the crime charged." *Id*. " 'A mere belief, unsupported by a showing of due care and bona fide, reasonable effort to ascertain the facts, is insufficient to constitute a mistake of fact defense.' " *People v Quinn*, 440 Mich 178, 196; 487 NW2d 194 (1992), quoting *People v Dillard*, 154 Cal App 3d 261, 267; 201 Cal Rptr 136 (1984).

Defendant mistakenly asserts that the "without permission" alternative element of element one of first-degree home invasion requires the specific intent to enter a dwelling without permission, such that her mistaken belief that she had permission to enter the home negated that element of the offense. Although defendant *was* charged with a specific-intent theory of first-degree home invasion, the specific intent in question was defendant's intent to commit assault inside her father's home. M Crim JI 25.2a. Defendant's alleged mistake of fact concerning her permission to enter Andrews's home was not a defense to the charge because her intention to enter the dwelling without permission was not the element of the offense charged by the prosecution. Again, defendant was charged with having "broke and entered the dwelling," not the alternative "entered a dwelling without permission" element of element one of the offense. The evidence was clear at trial that defendant forced open the storm door (while Johnson was holding it shut to

prevent her entry and damaging the door in the process), in order to enter the dwelling, which satisfies this element. To establish that the defendant broke into a dwelling: "It does not matter whether anything was actually broken; however, some force must have been used. Opening a door, raising a window, and taking off a screen are all examples of enough force to count as a breaking." M Crim JI 25.2a.

Furthermore, the record does not reflect that any alleged mistake of fact by defendant was honest or reasonable. Any permission defendant's had to enter Andrews's home was clearly revoked when Andrews told her that she needed to leave before the assault and her forced entry.[7] The suggestion that defendant could have reasonably, mistakenly believed that she had permission to enter Andrews's home — as she forced the storm door open (breaking it) as Johnson endeavored to hold it shut, so that defendant could continue her assault against Johnson — is absurd and disingenuous. Accordingly, defense counsel was not ineffective for failing to make a meritless request for a mistake of fact instruction. See *Isrow*, 339 Mich App at 532.

### 3. CUMULATIVE ERROR

Next, defendant argues that the cumulative effect of defense counsel's errors in her trial requires reversal of her convictions. We disagree.

The cumulative error doctrine is a standalone appellate claim that allows a defendant to argue that the cumulative effect of the other errors identified on appeal—whether those claims were preserved or unpreserved for appellate review—collectively deprived him or her of a fair trial. See *Collins v Secretary of Penn Dep't of Corrections*, 742 F3d 528, 542-543 (CA 3, 2014) (holding that cumulative error is a standalone appellate claim premised on the prejudice caused by cumulative effect of multiple identified trial errors).[8] A claim of cumulative error requires this Court to weigh the underlying claims of error, including whether those errors were preserved, to determine if the aggregate impact of those errors warrant reversal. See *United States v Caraway*, 534 F3d 1290, 1301-1302 (CA 10, 2008) (explaining how an appellate court should review the cumulative effect of the underlying errors when the defendant relies on errors that were both preserved and unpreserved for appellate review). Logically, it follows that a claim of cumulative error is inherently preserved for appellate review.

We review this issue to determine if the combination of alleged errors denied defendant a fair trial. The cumulative effect of several errors can constitute sufficient prejudice to warrant reversal even when any one of the errors alone would not merit reversal, but the cumulative effect of the errors must undermine the confidence in the reliability of the verdict before a new trial is granted. Absent the establishment of errors, there can be no cumulative effect of errors meriting

---

[7] We note that defendant offered no evidence in this case to rebut testimony indicating that she was instructed to leave, multiple times, prior to entering the residence.

[8] We are not bound to follow the opinions of lower federal courts, but we may consider them for their persuasive value. See *People v Gillam*, 479 Mich 253, 261; 734 NW2d 585 (2007).

reversal. [*People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007) (citations omitted).]

The only error we have found in this case was the seating of unqualified jurors in defendant's trial. This alone is insufficient to warrant reversal on the basis of cumulative error.

## C. SENTENCING

### 1. FAILURE TO ADMIT GUILT

Next, defendant argues that she is entitled to resentencing because the trial court impermissibly based defendant's sentence on the fact that defendant maintained her innocence at sentencing. We disagree.

Defendant preserved this issue by raising it " 'in a proper motion to remand filed in [this Court.]' " *People v Clark*, 315 Mich App 219, 223; 888 NW2d 309 (2016), quoting MCR 6.429(C). Basing a defendant's sentence in whole or in part on the fact that a defendant did not admit guilt at sentencing violates a defendant's constitutional right against self-incrimination. See *People v Conley*, 270 Mich App 301, 314; 715 NW2d 377 (2006).[9] We review de novo issues of constitutional law. See *People v Parks*, 510 Mich 225, 245; 987 NW2d 161 (2022).

A defendant's sentence cannot be based, even in part, on the fact that the defendant refuses to admit guilt. *People v Pennington*, 323 Mich App 452, 467; 917 NW2d 720 (2018). When determining whether a sentence was improperly based on a defendant's refusal to admit guilt, we focus on: "(1) the defendant's maintenance of innocence after conviction, (2) the judge's attempt to get the defendant to admit guilt, and (3) the appearance that had the defendant affirmatively admitted guilt, [their] sentence would not have been so severe." *People v Wesley*, 428 Mich 708, 713; 411 NW2d 159 (1987). If the record supports an indication of these factors, then the sentence was likely improper, but if "the court did no more than address the factor of remorsefulness as it bore upon defendant's rehabilitation, then the court's reference to a defendant's persistent claim of innocence will not amount to error requiring reversal." *Id*.

Considering the relevant factors, defendant clearly did not admit guilt at sentencing (Factor 1). See *id*. In fact, the record reflects that defendant maintained that Johnson snuck up behind defendant while she was eating her pickled bologna on the porch of Andrews's home. Johnson then grabbed the paring knife and attacked defendant. Defendant made clear at sentencing that she believed that Johnson killed two prior husbands, and that Johnson also intended to kill Andrews. Defendant also believed that her prosecution was the result of a conspiracy between Johnson, the prosecution, and the person named in Andrews's will as the executor of Andrews's

---

[9] Defendant asserts that punishing a defendant for maintaining innocence at sentencing is prohibited because it violates the defendant's right to a jury trial. However, *People v Pennington*, 323 Mich App 452, 465-466; 917 NW2d 720 (2018), upon which defendant relies, involved a circuit court judge who had a "blanket policy of imposing sentences at the top of the guidelines range on defendants who exercise their right to a trial rather than plead guilty." That is not the nature of the issue in this case, but defendant is correct that this issue is one of constitutional law.

estate, to ensure that defendant could not inherit Andrews's property.  At no point did the trial court attempt to get defendant to admit guilt (Factor 2).  See *id*.

Defendant's presentence investigation report (PSIR) recommended a sentence of 5 to 20 years' imprisonment, but the trial court ultimately concluded that a lesser sentence of 54 months to 20 years was appropriate.  At sentencing, the court appears to have had some degree of difficulty reconciling defendant's crime with "the person that [defendant's] relatives and friends have seen," and the court went so far as to say that the court believed that there was a "kind and decent person in [defendant]."  The court opined that defendant's jealously of Johnson's role in Andrews's life had clouded defendant's judgment until it eventually led defendant to attack Johnson and to look at Andrews with "contempt and disgust" during trial.  The court recognized that defendant truly believed that she was the victim, stating:

> I want you to understand that I have thoroughly considered a possible downward departure, but after I have looked at the big picture, I cannot in good conscience do that, in light of the fact that you clearly appear to be, in your mind, the victim.  I don't see it that way.

After reviewing the entire record, we do not find an indication that defendant would have received a lesser sentence had she admitted guilt at sentencing (Factor 3).  "Here, the sentencing judge neither asked defendant to admit [her] guilt nor offered [her] a lesser sentence if [she] did."  *Id*. at 716.  Admittedly, the court did not clearly identify whether the court considered defendant's belief that she was the victim as evidence of remorse.  However, defendant's lack of remorse is evident on the record.  Defendant voiced her desire to kill Johnson to third parties both before and after defendant's arrest, and defendant sarcastically "thanked" Johnson on the record at sentencing for saying that defendant wanted to care for Andrews, which she said was "[t]he [only] true statement [Johnson] made during the entire trial."  Defendant also made her contempt for the trial court plain.

"[Although] a defendant is certainly free to continue to assert innocence, a sentencing judge should not be required to tip-toe through the metaphysical distinctions required to separate that continued assertion from a lack of remorse."  *Id*. at 727 (CAVANAGH, J., concurring).  On the record before us, we do not believe that reversal is warranted in this case on this issue.

## 2. PROPORTIONALITY OF DEFENDANT'S SENTENCE

Lastly, defendant argues that she is entitled to resentencing because her sentence was disproportionate and unreasonable.  We disagree.

We review for an abuse of discretion whether the trial court has imposed an unreasonable sentence.  *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017).  The trial court abuses its discretion when its decision "falls outside the range of reasonable and principled outcomes" or when the court "makes an error of law."  *People v Christian*, 510 Mich 52, 75; 987 NW2d 29 (2022) (quotation marks and citation omitted).  "A sentence is unreasonable—and therefore an abuse of discretion—if the trial court failed to adhere to the principle of proportionality in imposing its sentence on a defendant."  *People v Lampe*, 327 Mich App 104, 125; 933 NW2d 314 (2019).  The principle of proportionality requires that a sentence be " 'proportionate to the seriousness of

the circumstances surrounding the offense and the offender.' " *Steanhouse*, 500 Mich at 459 (quotation marks and citation omitted). See also *Graham v Florida*, 560 US 48, 59; 130 S Ct 2011; 176 L Ed 2d 825 (2010). We review for clear error the trial court's factual findings at sentencing. *Lampe*, 327 Mich App at 125-126.

"The Michigan Constitution vests sentencing authority in the Legislature." *People v Posey*, 512 Mich 317, 343; 1 NW3d 101 (2023) (opinion by BOLDEN, J.). See Const 1963, art 4, § 45. "For certain punishments, the Legislature has assigned discretionary authority to trial courts to sentence a defendant within a given range, with each sentence being individualized to the circumstances of the offense and the offender." *Posey*, 512 Mich at 343 (opinion by BOLDEN, J.). In 1998, the Legislature enacted statutory sentencing guidelines, MCL 777.1 *et seq*. *Id*. at 344. The sentencing guidelines are advisory in all contexts, and a trial court may depart from the minimum sentencing guidelines range if the departure is reasonable, and the court justifies its sentence on the record to facilitate judicial review. MCL 769.34(3); *Steanhouse*, 500 Mich at 466-467, 470.

There is a nonbinding presumption that within-guidelines sentences are proportionate. *Posey*, 512 Mich at 359 (opinion by BOLDEN, J.). A defendant must show unusual circumstances to overcome this presumption. See *People v Burkett*, 337 Mich App 631, 637; 976 NW2d 864 (2021). Factors that this Court considers when reviewing a defendant's sentence for proportionality include: "(1) the seriousness of the offense; (2) factors inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation." *Lampe*, 327 Mich App at 126 (quotation marks and citation omitted).

To begin, defendant argues that the sentencing guidelines were inadequate to guide the trial court when determining defendant's sentence. We see no merit in this argument as it relates to the reasonableness of defendant's sentence because the caselaw is clear that the guidelines are merely advisory, see *Steanhouse*, 500 Mich at 466-467, and within-guidelines sentences, such as defendant's, are presumptively reasonable, see *Posey*, 512 Mich at 359 (opinion by BOLDEN, J.).

Looking to the proportionality factors, defendant's sentencing offense, first-degree home invasion, is a serious felony that carries a maximum penalty of 20 years' imprisonment (Factor 1), see *Lampe*, 327 Mich App at 126. MCL 750.110a(5). Defendant argues that her conduct was not as severe as a typical first-degree home invasion such that a conviction of that offense did not "fit." Clearly, the jury did not agree, nor do we. Defendant asserts that first-degree home invasion typically involves the offender breaking into the home of a stranger to commit robbery or assault. The fact that defendant forced her way into her father's home to continue her assault against Johnson during a domestic dispute, rather than breaking into the home of a stranger, does not lead us to conclude that defendant's sentence overestimated the seriousness of her crime.

Next, we find defendant's contention that her sentence did not adequately consider her mitigating factors in this case (Factor 2), to be meritless. See *Lampe*, 327 Mich App at 126. Defendant argues that her sentence did not adequately account for the fact that she had no prior criminal history, that she did not violate her bond during the pendency of this case, and that defendant worked as a bail bond agent for several years. Notably, "trial courts are not required to

expressly or explicitly consider mitigating factors at sentencing." *People v Bailey*, 330 Mich App 41, 63; 944 NW2d 370 (2019). Nevertheless, at sentencing, the trial court stated:

> I do want to take into consideration the fact that you don't have any prior criminal convictions whatsoever, and you did well on bond. As far as I know, you have not been a problem at all at the jail.

Additionally, defendant told the court at sentencing that she had previously worked as a bail bond agent for 10 years. We see no reason to conclude that the court failed to adequately consider defendant's mitigating factors.

Lastly, regarding additional factors not considered by the guidelines (Factor 3), *Lampe*, 327 Mich App at 126, there is no indication that the trial court improperly based defendant's sentence on the fact that defendant maintained her innocence at sentencing, as we have explained. Ultimately, the trial court determined that defendant's within-guidelines sentence was appropriate in light of the offense and defendant. On the record before us, we do not believe that defendant has overcome the presumption that her within-guidelines sentence was proportionate. See *Posey*, 512 Mich at 359 (opinion by BOLDEN, J.). That is, we conclude that defendant's sentence was a reasonable and principled outcome. See *Christian*, 510 Mich at 75.

Affirmed.

/s/ Randy J. Wallace
/s/ Anica Letica
/s/ Kathleen A. Feeney